Mervin GREEN, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 14378.

United States Court of Appeals
District of Columbia Circuit.

Argued June 24, 1958.

Decided July 31, 1958.

Petition for Rehearing En Banc Denied
Sept. 12, 1958.

---

Mrs. Jean F. Dwyer, Washington, D. C., for appellant.

Mr. Nathan J. Paulson, Asst. U. S. Atty., with whom Messrs. Oliver Gasch, U. S. Atty., Carl W. Belcher and Victor W. Caputy, Asst. U. S. Attys., were on the brief, for appellee.

Before BAZELON, Circuit Judge, and HASTIE, Circuit Judge, United States Court of Appeals for the Third Circuit,* and DANAHER, Circuit Judge.

DANAHER, Circuit Judge.

Appellant was convicted on two counts involving violations of the narcotics laws. He has appealed, urging as error the District Court's denial of his motion for the suppression of 229 capsules containing heroin seized from his person as an incident to his arrest. The whole case turns on the circumstances under which the officers acted.

On August 26, 1957, about 11:15 A.M., two detectives in plain clothes assigned to the narcotics squad of the Metropolitan Police Department were engaged in the investigation of narcotic activities. Slowly cruising in an unmarked car in the vicinity of North Capitol and R Streets, N. W. in the District of Columbia, they overtook and drove abreast of two men, walking ahead of them on R Street. They thereupon immediately identified one as John Arthur "Jap" Palmer, a known narcotic addict, but did not know the other, the appellant here. The officers stopped the car, addressed Palmer by name, and called the two men over to them.

The courts in various opinions have said that officers in the course of an investigation may ask questions before making an arrest. The narcotics officers were entitled to ask "Jap" Palmer, the known addict, if he were still using narcotics, and then make an effort to induce him to inform them as to his source of supply. He could have declined to talk. He could have refused to halt. The officers certainly would have had no right whatever, then and there without more, either to seize him or to search him. Of course, this was true as to Green, as well, as of that moment.

Palmer heeded their call and started toward the car. Green, however, "took off," as one witness put it, and ran into a nearby yard. He passed the occupant of a house as she sat on a bench near her front steps. He ran up the steps, across the landing at the top, and tried to open her front door. She called out "Fellow, what do you want? I live in there," but received no answer. Officer Brewer started after the appellant.[1] The

---

\* Sitting by designation pursuant to the provisions of Sec. 291(a), Title 28 U.S. Code.

1. The householder testified that her door had been locked, and that appellant had taken hold of the knob of her door "just like he was going to walk in his own place."

woman then said "You all take him in the street."

▮ Although appellant, in the absence of the jury, testified in support of his motion,[2] the District Judge was entitled to credit the officers' testimony where it conflicted with that offered by the appellant. Moreover, his account of what happened on the steps at the time of his arrest omitted reference to his attempt to enter the house. He made no mention of the householder's warning to him. He was placed under arrest for attempted unlawful entry. Thereafter one of the officers searched the appellant and found an envelope containing the capsules of narcotics. He would have us say the trial judge should have suppressed this evidence because the attempted unlawful entry was triggered by the police approach. But the officers testified that "Jap" responded when hailed while the appellant "just ran east and tried to get into premises 53 R St." As he ran, the officers followed. Had he remained standing where he was first accosted, or had he merely refused to talk, the police would have lacked probable cause either to arrest or to search him. The officers would have had no justifiable reason to lay hands upon him. He argues from such considerations that his taking to flight was spurred by police action. In the circumstances we cannot say his flight was shown to be the result of personally menacing police action. Since he ran, his precipitate action constituted one more circumstance to be taken into account by the officer who followed him.

"It is to-day universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest * * * and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself." 2 Wigmore, Evidence § 276 (3d ed. 1940).

▮ Of course flight creates no legal presumption of guilt but it is "competent evidence against [an accused] as having a tendency to establish his guilt."[3] "[I]t has at no time been doubted that flight is a circumstance from which a court *or an officer* may infer what everyone in daily life inevitably would infer."[4] (Emphasis added.) The appellant, then, made his own decision, not because of threatened assault, for he proved none. His effort to escape impelled his attempted illegal course in the face of the householder's protest, and before the very eyes of the officers. The arrest was proper.[5]

▮ The District Judge, after hearing and seeing all witnesses,[6] concluded that probable cause for the arrest existed, taking into account as narrated the

---

2. "[T]his automobile rolled up and the two men shouted in the car. They did say, 'Hey,' and at the same time they jumped out of the car and started running toward me. So, I backed up on the lady's step and I did go up on the lady's step trying to get out of the way of them. So when they came up there, he told me to come off the step and I asked him what did he want. So, he said, 'Come on off the step.'

"And by this time he showed me a badge and grabbed me by my arm and took me back to the car."

We might assume Green concluded the plain-clothesmen were about to rob him of several hundred dollars worth of narcotics and therefore ran. It equally may be inferred that he immediately suspected the two men were indeed officers, and he ran to seek a place to discard the narcotics. One officer testified that as Green mounted the steps, he glimpsed a brown envelope which Green partially pulled from his right trousers pocket but as rapidly replaced.

3. Allen v. United States, 1896, 164 U.S. 492, 499, 17 S.Ct. 154, 157, 41 L.Ed. 528.

4. L. Hand, C. J., in United States v. Heitner, 2 Cir., 1945, 149 F.2d 105, 107; cf. Vick v. United States, 5 Cir., 1954, 216 F.2d 228, 232.

5. We must treat the situation as it confronted the trained narcotics officer at the time, and view his problem "through his eyes." Bell v. United States, 1958, 102 U.S.App.D.C. 383, 388, 254 F.2d 82, 87, rehearing denied, 1958.

6. The appellant at the hearing on his motion denied possession of the 229 capsules which had been removed from his trousers pocket. He admitted two prior felony convictions.

combination of circumstances, with the householder protesting Green's invasion of her property, his attempt to open her front door and her demand that "You all take him in the street." He ruled that the search and recovery of 229 capsules of heroin were lawfully incidental to a lawful arrest. We agree.[7]

Affirmed.

BAZELON, Circuit Judge, (dissenting).

The majority says that if appellant had "remained standing where he was first accosted * * *, the police would have lacked probable cause either to arrest or to search him." That is certainly true.

His attempt to run away when he was accosted did not give the police probable cause to believe he was violating the narcotics laws. The majority does not say that it did. Indeed, the Government conceded at the argument that *none* of the circumstances observed by the officers gave them probable cause to arrest appellant for a narcotics violation. The officers themselves apparently knew this, for they made the arrest on an illegal entry charge, not a narcotics charge. The question before us, then, is whether there was probable cause to believe that appellant was attempting to enter the dwelling in question in violation of D.C. Code § 22–3102. Appellant's being with a known addict, his flight, his possible attempt to get rid of the narcotics before he was caught, in short everything that happened before his alleged attempt to get into the house, are irrelevant to the question before us.

The usual question in the "probable cause" cases is whether what the officers observed justified them in believing that the defendant had done a certain criminal act. This case is different. There is no question as to what appellant did, for whatever he did was done in the presence of the officers. The question here is whether those acts amounted to a crime. If they did not, the officers had no right to make the arrest.[1]

D.C.Code § 22–3102 makes it a misdemeanor, punishable by a fine of up to $100 or imprisonment for up to six months or both, to "attempt to enter [any] * * * dwelling * * * *against the will of the lawful occupant* * * *." Emphasis supplied. It is a necessary element of the offense that the attempt be *against the will* of the lawful occupant. The statute cannot be read to make it a crime to enter or attempt to enter a house merely *without the consent* of the lawful occupant. An attempt to enter after the owner has forbidden it is a crime. But one who enters when the owner has neither consented to it nor forbidden it, though he may be guilty of a civil trespass, does not violate the criminal statute.[2] Under another clause of the statute such a person becomes guilty of illegal entry only if, after being ordered to leave, he fails to do so. Salesmen, solicitors or other nuisances who may enter our homes uninvited when they find the door unlocked are not subject to arrest unless they refuse to leave when ordered out.

---

7. Ellison v. United States, 1954, 93 U.S. App.D.C. 1, 4, 206 F.2d 476, 479; cf. Lee v. United States, 1954, 95 U.S.App. D.C. 156, 221 F.2d 29.

1. If appellant's attempt to get into the house amounted to a crime we would reach some of the problems, pressed on us by appellant, as to whether the police may, in effect, manufacture the justification for searching a mere suspect by spurring him into committing some misdemeanor. E. g., is a person liable to arrest for illegal entry if he runs into the nearest house, against the owner's will, in an attempt to flee from threatened violence by unidentified assailants? If, instead of forcing his way into a house in flight from the apparent threat, the person runs across a street against a traffic light, may the police arrest him and, if so, may they search him? Since appellant's conduct did not amount to a crime, as I view the case, these problems do not arise.

2. If the entry is made by opening a closed door and if it is accompanied by an intent to commit a criminal offense, the person is, of course, guilty of housebreaking under D.C.Code § 22–1801.

To justify this arrest, therefore, the Government must show that appellant attempted to enter the house *against the will* of the householder, not merely *without her consent*.

Taking as true the officers' own account of what happened,[3] I conclude that appellant committed no crime. They said that appellant ran into the front yard of the house, past Mrs. Briggs, the householder, who was sitting on a bench in the yard, ran up the steps, placed his hand on the door knob as if trying to open the door and then "bounced off the door" into the arms of one of the officers who was right behind him.[4] The officers seized him and, with the aid of the second officer who then came up and flashed his badge, arrested him. The officer who was right behind appellant as he went up the stairs testified as follows:

"Q. What did she [Mrs. Briggs] say and when did she say it before the defendant bounced off the door? A. As he was going past, she asked him, she says, 'I live here, where are you going?' And then he tried the door and she said, 'Get away from the door.' "

Thus the only expression of Mrs. Briggs' will that appellant not enter her house [5] occurred *after* he had attempted to enter. And after she ordered him away, the record shows he made no further attempt to enter, for the police seized him immediately after his one attempt. Therefore the statute was not violated.

Since the arrest was illegal, appellant's motion to suppress the evidence seized pursuant thereto should have been granted. I would reverse the conviction and remand the case for a new trial.

3. In certain material respects, the householder's account varied from that of the officers.

4. The officer testified that he "took off" after appellant and, though he did not run, but only walked "at a fast gait," was close enough to catch him as "he bounced off the door and bounced right back into my arms." Mrs. Briggs said that appellant also only "walked" past her and up the stairs.

5. From Mrs. Briggs' testimony it does not appear that she ordered appellant away from her door. It appears rather that she ordered the police to make their arrest off her property. She testified that, when the officers told her they wanted appellant, she told them "You all take him in the street."