**Edward J. ELLIS, Appellant,**

**v.**

**UNITED STATES of America, Appellee.**

Nos. 13511, 14606.

United States Court of Appeals District of Columbia Circuit.

Argued Nov. 18, 1958.

Decided Feb. 12, 1959.

Certiorari Denied May 18, 1959.

See 79 S.Ct. 1129.

Mr. Kingdon Gould, Jr., Washington, D. C., with whom Mr. William D. Rogers, Washington, D. C. (both appointed by this court) was on the brief, for appellant.

Mr. Joseph A. Lowther, Asst. U. S. Atty., with whom Messrs. Oliver Gasch, U. S. Atty., and Carl W. Belcher, Asst. U. S. Atty., were on the brief, for appellee. Messrs. Lewis Carroll and Nathan J. Paulson, Asst. U. S. Attys., also entered appearances for appellee in No. 13,511.

Before EDGERTON, WASHINGTON and DANAHER, Circuit Judges.

WASHINGTON, Circuit Judge.

These cases were before us on an earlier occasion, when the court sitting en banc denied Ellis' petition for leave to appeal in forma pauperis from two judgments convicting him of housebreaking and larceny. Ellis v. United States, 1957, 101 U.S.App.D.C. 386, 249 F.2d 478. Our judgment was vacated by the Supreme Court, which remanded the matter for reconsideration. 1958, 356 U.S. 674, 78 S.Ct. 974, 2 L.Ed.2d 1060. On reconsideration, we allowed the appeals in forma pauperis and the cases came on for argument on the merits.

As indicated in the opinions just cited, the issue before us is whether the police had probable cause to effect appellant's arrest without a warrant. If they did not, the arrest was invalid, and the incriminating materials they took from appellant's person at the time of his arrest were not properly admitted into evidence. Appointed counsel have made a strong argument. But we are satisfied that there was probable cause for the arrest, and that the evidence taken was properly admitted.

In essence, the testimony of the arresting officers was that they had been specially assigned to look for the perpetrator of a series of day-time housebreakings that had taken place in a particular area in Northeast Washington. They said that the Police Department had broadcast many descriptions of the suspect ("lookouts"), the latest having been issued on the day prior to the arrest. The look-

outs—based on information received from complaining witnesses—described the suspect as a "brown-skinned" colored man about "five feet seven" or "five feet eight" in height, about 150 pounds in weight, "very neatly" dressed, wearing a "gray topcoat," sometimes said to have a "half-belt" in the back, or a "black topcoat," and a "brown" or "gray" hat. His age was variously described as "middle teens," "late teens," "19, 21, 22," or "22–24." The look-outs, issued from time to time over a period of months, referred to each of a series of crimes of common pattern, all having been committed by someone who forced open the front doors of houses, with some instrument, in the daylight hours.

On the day in question, shortly before noon, the officers, who were in plain clothes, were driving an unmarked car down one of the streets in the area where the crimes had occurred. They saw Ellis approach on foot from the opposite direction. They testified they were mindful of the descriptions given in the look-outs, and that Ellis appeared to them to be the wanted man: he was "brown-skinned," "around five seven or five eight" in height, from "a hundred forty-five to a hundred and fifty" pounds in weight, "very neatly dressed," wearing a "gray topcoat with a half-belt in the back," and a "brown" hat, and was estimated to be "between twenty-two and twenty-five" years old.

The officers drove on a short distance, turned their car around, and waited. They saw Ellis go up on the porch of a house, knock on the door, stand there looking "around the area" for a "few minutes," then return to the street and walk back toward the direction from which he had come. As Ellis approached, the officers hailed him and asked him to come to their car, saying that they were police officers. They got out of the car, and asked Ellis his name. He gave it. He was then asked, "Do you have any identification"? The answer was in the negative. Ellis appeared nervous; he "dropped his money * * * chewing gum, cigarettes, and so forth on the ground." The officers "asked him twice to take his hand out of his pocket." However, he "kept his right hand in his coat pocket and his arm close against his side." One of the officers "patted him and found a bulge in his inside pocket on the righthand side." The officers then searched him, and found certain items which were later used against him. Such was the officers' testimony, which was not contradicted in any material respect.

Taking all of these circumstances together, we think the officers had probable cause to make the arrest. Such inconsistencies as may be found in some of the broadcast descriptions are not fatal to the Government's case: a suspect may change his clothes, complaining witnesses may not agree in their estimates of age or height, and so on. Here the basic elements of the various descriptions were similar, and fairly matched Ellis' appearance. This, coupled with Ellis' presence in the area at that time of day, the entry on the front porch, and his behavior when confronted, justified his apprehension. All fitted into the known pattern, and pointed to the reasonable probability that Ellis was the man the officers were seeking. Their action is not to be "measured by what might be probable cause to an untrained civilian passerby. When a peace officer makes the arrest the standard means a reasonable, cautious and prudent peace officer." Bell v. United States, 102 U.S.App.D.C. 383, 387, 254 F.2d 82, 86, certiorari denied, 1958, 358 U.S. 885, 79 S.Ct. 126, 3 L.Ed.2d 113. See also Draper v. United States, 1959, 79 S.Ct. 329.

■■ The circumstance that the officers found on Ellis' person items which incriminated him—a screwdriver and a stolen ring—cannot, of course, provide any part of the necessary showing of probable cause. See United States v. Di Re, 1948, 332 U.S. 581, 595, 68 S.Ct. 222, 92 L.Ed. 210. Nor can vague and generalized descriptions justify "drag-net" round-ups of large numbers of persons who might fit such a description. Here, however, there was no such round-up;

and the person arrested not only fitted the broadcast description but supplied other indicia through his conduct.

The judgments of conviction must accordingly be

Affirmed.

EDGERTON, Circuit Judge (dissenting).

I think the general and conflicting descriptions of the culprit were not enough, without seriously suspicious circumstances, to justify an arrest of this man. There is nothing in the slightest degree suspicious about knocking on a front door, looking around while waiting for an answer, and going away. There is nothing seriously suspicious about nervousness in responding to a police challenge. And even if the defendant's nervousness were enough to arouse reasonable suspicion, it would not furnish probable cause for his arrest, because the nervousness did not appear until after the arrest. The defendant was arrested as soon as the police accosted him, for he must have known at once that he was no longer free to walk away. I think the arrest was illegal and the evidence should have been suppressed.