STATE OF NEBRASKA, APPELLEE, v. RANDALL M. SMITH, APPELLANT.

152 N. W. 2d 16

Filed June 23, 1967.    No. 36402.

Luebs, Tracy & Huebner, for appellant.

Ralph D. Nelson and Fred J. Swihart, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

WHITE, C. J.

Defendant appeals from a conviction and sentence for violation of a Lincoln municipal ordinance prohibiting the operation of a motor verhicle by a person during any period that his motor vehicle operator's license has been revoked or suspended, or after such suspension or revocation but before reinstatement of his license or issuance of a new Nebraska license.

On August 18, 1964, defendant's motor vehicle operator's license was revoked and suspended by the Department of Motor Vehicles for 1 year under the provisions of the "point system" law, section 39-7,128, R. S. Supp., 1965. On August 19, 1964, defendant received a notice of revocation of his license which provided as follows: "Any operating of a motor vehicle by you after the date of this notice, will constitute a violation of Nebraska Law for the duration of the revocation or thereafter, until proof of financial responsibility is furnished, as provided by law." On August 27, 1965, defendant was stopped by a Lincoln police officer for a stop signal violation. Upon inquiry the defendant produced a Missouri driver's license and informed the officer that his Nebraska operator's license had been revoked in August 1964. This prosecution followed. Defendant moved to Kansas City, Missouri, in February 1965, secured a Missouri motor vehicle operator's license, and remained a resident of Missouri until about April 1, 1966.

Defendant contends that the judgment and sentence are violative of the due process clauses of the federal and state Constitutions. Under this generalized attack, defendant includes a number of arguments which we will attempt to assimilate in this opinion. He argues that no authority exists for a city of Lincoln ordinance prohibiting the operation of a vehicle during suspension or revocation or after suspension or revocation but before reinstatement or issuance of a new license. He cites Gembler v. City of Seward, on rehearing, 136 Neb. 916, 288 N. W. 545, a 1939 case which held that a city had

no power to suspend or regulate the license or the privilege of driving a motor vehicle because no power had been conferred upon it by the state. The authority of the city of Lincoln to enact the specific ordinance under which the defendant was prosecuted is contained in section 60-430.05, R. R. S. 1943, enacted in 1959 (Laws 1959, c. 293, § 4, p. 1099), as follows: "Upon conviction of any person in any court within this state of a violation of any city or village ordinance pertaining to the operation of a motor vehicle by such person during any period that his motor vehicle operator's license has been revoked or suspended pursuant to any law of this state, or after such suspension or revocation but before reinstatement of his license or issuance of a new license, the penalty shall be as follows: * * *." The ordinance of the city of Lincoln (section 10.52.040) provides as follows: "It shall be unlawful for any person to operate a motor vehicle upon any street or highway within the city during any period that his motor vehicle operator's license has been suspended or revoked pursuant to any law of the State of Nebraska, or after such suspension or revocation but before reinstatement of his license or issuance of a new Nebraska license." It will be noted that this ordinance is almost verbatim with the authorization provided by the statute. It therefore follows that the city ordinance under which the defendant was prosecuted was a valid ordinance duly authorized by the statute and there is no merit to the contention of the defendant in this respect.

In part of defendant's sentence he was ordered not to operate any motor vehicle for any purpose for a period of 1 year from the date of his final discharge from jail. Defendant argues that this penalty is not authorized by the state's statute. His argument overlooks the provisions of section 60-430.05, R. R. S. 1943, which, as we have pointed out above, not only authorized a city to enact an ordinance prohibiting the operation during suspension or revocation or after such suspension but

before the reinstatement or the issuance of a new license, but directs that the penalty shall be as follows: "(1) For a first such offense such person shall be imprisoned in jail for thirty days, and the court shall, as a part of the judgment of conviction, *order such person not to operate any motor vehicle for any purpose for a period of one year from the date of his final discharge* from the jail; * * *." (Emphasis supplied.) The city ordinance incorporates this exact language, and the sentence imposed upon the defendant is also in identical language. There is no merit to this contention.

Defendant argues that the ordinance and statute are vague and ambiguous; that there is no ascertainable standard of guilt; and that therefore the statute and the ordinance are unconstitutional and invalid. We do not agree. The language of the statute and ordinance is plain and unambiguous and does not require further interpretation. It explicitly warns a person whose license has been revoked or suspended that he cannot drive after such suspension or revocation until his license has been reinstated or he has secured a new license. This language in the statute was designed to deal with the precise period of time at issue in this case. The statute and the notice served on the defendant clearly and unequivocally warn that lapse of time is not enough and that further action is required on his part. The ordinance, following the authority granted in the state statute, prohibits the operation of a motor vehicle until a person has secured the reinstatement of his old license or the issuance of a new Nebraska license. Furthermore we have recently and specifically held that the mere lapse of time after suspension of an operator's license does not restore his right to operate a motor vehicle. In Tyrrell v. State, 173 Neb. 859, 115 N. W. 2d 459, this court stated the law as follows: "In case it shall be urged that the 6-month suspension of the license of the defendant had expired by its terms and for that reason the conviction was invalid, it is pointed out that the right

to operate a motor vehicle after suspension is not restored by mere lapse of time. *The right to operate thereafter depends upon the receipt of a new license.* See § 60-418, R. R. S. 1943." (Emphasis supplied.) It should be pointed out that the purpose of these sections of the statute is to prohibit the operation of a motor vehicle and the issuance of a new license until compliance has been made with the financial responsibility laws of this state. Section 39-7,133, R. R. S. 1943, specifically provides that it shall be unlawful to operate any motor vehicle after revocation of an operator's license and that at the expiration of the period of revocation that, "such person shall give and maintain for three years proof of financial responsibility, as required by section 60-525." Section 60-525, R. S. Supp., 1965, specifically provides that, "* * * such license and registration shall *remain* suspended or revoked and *shall not at any time thereafter be renewed* nor shall any license be thereafter issued to such person, nor shall any motor vehicle be thereafter registered in the name of such person *until permitted under the motor vehicle laws of this state* and not then unless and until he shall give and shall maintain for three years proof of financial responsibility." (Emphasis supplied.) It is abundantly clear, therefore, that the defendant's privilege to operate a motor vehicle and his license to drive a motor vehicle were suspended and revoked for not only a period of 1 year but until he had secured a new Nebraska license after complying with the financial responsibility requirements of the law. Defendant argues that there is nothing in the order of revocation, on file with the Department of Motor Vehicles, that advised him of these requirements. Not only was the defendant charged with knowledge of the law, but the notice of revocation received by the defendant on August 19, 1964, clearly stated to the defendant that he could not operate a motor vehicle, "for the duration of the revocation or thereafter, until proof of financial responsibility is furnished, as provided by

law." It is clear, therefore, that the defendant was charged with notice, both under the law, and the notice of revocation that he received that he could not resume the operation of his motor vehicle by simply relying upon the mere lapse of time. To hold otherwise would permit the defendant to operate a motor vehicle in violation of the clear and mandatory provisions of the statute and in violation of financial responsibility laws of this state. There is no merit to these contentions.

Perhaps the main thrust of defendant's argument is that, as a matter of law, he was entitled to operate his motor vehicle at the time and place in question by virtue of his Missouri driver's license. It is true, that although his license was suspended and revoked while he was a resident of the State of Nebraska, that the defendant was a resident of the State of Missouri and had obtained a valid Missouri driver's license. Defendant's argument in this respect consists of an involved analysis of sections 60-410, R. S. Supp., 1965, and 60-422 and 60-423, R. R. S. 1943. Defendant's argument in this respect fails to mention or take into account the applicable provisions of section 60-418, R. R. S. 1943, which states as follows: "Any resident or nonresident whose operator's license or right or privilege to operate a motor vehicle in this state has been suspended or revoked as provided in this act, shall not operate a motor vehicle in this state under a license, permit or registration certificate issued by any other jurisdiction or otherwise during such suspension or after such revocation until a new license is obtained when and if permitted under this act." As we see it, the language of this statute is clear and unambiguous and requires no interpretation. This statute clearly removes any possible chance that the words "issuance of a new license" as contained in section 60-430.05, R. R. S. 1943, and in the applicable city ordinance here involved, could be interpreted to mean a license or permit from another jurisdiction or state. It specifically prohibits operation by either a resident or nonresident under such

a license or permit both during the period of suspension in this state or after such period of revocation until a new license is obtained, "when and if permitted under this act." Furthermore under section 60-525, R. S. Supp., 1965, a license remains suspended and revoked and could not be renewed "until permitted under the motor vehicle laws of this state" after compliance with the requirements of the financial responsibility laws. To hold otherwise would be to hold that a person could flaunt the motor vehicle laws of the State of Nebraska and the financial responsibility requirements by the simple expedient of securing a license to operate a motor vehicle in another state or jurisdiction. Defendant argues that he was a nonresident at the time of the alleged offense and is exempt from the operation of the ordinance and the statute involved by virtue of the provisions of section 60-410, R. S. Supp., 1965. Defendant attempts to paraphrase this section of the statute without quoting it in full. The applicable portion states as follows: "Nothing herein contained shall prevent a nonresident of this state from operating a motor vehicle upon the public highways of this state during the period within which he may *lawfully* operate such motor vehicle in this state under the provisions of the general motor vehicle laws of this state, * * *." (Emphasis supplied.)

Furthermore, it is noted that this statute was enacted in 1929 (Laws 1929, c. 148, § 11, p. 517). It has remained unamended except for a provision with reference to agricultural employees, not pertinent here. Section 60-418, R. R. S. 1943, was first enacted in 1937 (Laws 1937, c. 141, § 24, p. 520), and was later amended to contain the present language by Laws 1943, c. 135, § 1, p. 465. We see no conflict in the statutes, but if there were, it is elementary that the latest statute would control. It was plainly the intention of the Legislature by the enactment of section 60-418, R. R. S. 1943, to prohibit either a resident or nonresident whose operator's license or privilege to operate a motor vehicle in this state had been

suspended or revoked, to evade compliance with the statutes of this state by the expedient of securing a license in another state or jurisdiction. Defendant was not lawfully operating his vehicle in the State of Nebraska because his Nebraska motor vehicle operator's license and privilege to drive in the State of Nebraska had been suspended and he had not been reinstated or secured a new license on the date of the offense. There is no merit to this contention.

Defendant contends that his constitutional rights were violated when the police officer stopped him and, on inquiry, discovered from the defendant that he did not have a Nebraska driver's license. Every temporary restriction of absolute freedom of movement is not an illegal police action and courts have recognized the right of law enforcement officers reasonably and temporarily to stop vehicles and question occupants, even though the grounds for questioning might not amount to a basis for arrest or search. United States v. Bonanno (1960), 180 F. Supp. 71; Green v. United States (1958), 259 F. 2d 180; Poulas v. United States (1938), 95 F. 2d 412; Weathersbee v. United States (1933), 62 F. 2d 822; cf. Ellis v. United States (1959), 264 F. 2d 372.

We recently stated in State v. Carpenter, *ante* p. 639, 150 N. W. 2d 129, as follows: "Particularly pertinent here is the following from Justice Burton, quoted in United States v. Bonanno, supra: ' "It is only by alertness to proper occasions for prompt inquiries and investigations that effective prevention of crime and enforcement of law is possible." ' " And it was pointed out in State v. Carpenter, *supra*, as follows: "It is not possible to ignore the fact that police officers are charged with the duty to prevent crime as well as to detect it. Often an immediate inquiry is an indispensable attribute to the prevention and discovery of crime. This is particularly true where a moving vehicle is involved. Then, time is of the essence."

We further point out in this case that the officer

stopped the defendant because of a signal light violation, no objection was made to the reception of this testimony, and that at the time of the temporary detention the defendant had not been arrested. As to the defendant's contention that he was entitled to counsel, the record shows that he was represented by counsel from his arraignment in municipal court and continuously throughout these proceedings. Defendant argues that the acceptance of this evidence is barred by the holding in Escobedo v. Illinois, 378 U. S. 478, 84 S. Ct. 1758, 12 L. Ed. 2d 977. This case is not applicable because, among other reasons, it was a felony case, the defendant was subjected to an in custody interrogation after his arrest and when he was represented by counsel, and specifically requested the presence of his counsel at the interrogation. To hold that a police officer, on making a routine investigation of a traffic offense, inquiring about the status of a driver's license to operate a vehicle, etc., would be required to advise such a driver of a right to counsel before interrogation "would emasculate crime prevention and render peace officers impotent and useless." State v. Carpenter, *supra*. There is no merit to these contentions.

We have examined other contentions made by the defendant and they have either been disposed of by what we have already said or are without merit. The judgment of the district court is correct and is affirmed.

AFFIRMED.

McCOWN, J., dissenting.

I respectfully dissent. I find no fault whatever with the majority decision as applied to a Nebraska resident. However, the defendant was a resident of the State of Missouri and had a valid Missouri driver's license, and the specific period of revocation of his Nebraska driver's license had expired.

Section 60-430.05, R. R. S. 1943, refers only to "* * * reinstatement of his license or issuance of a new license, * * *" without reference to the state of issuance, while

the city ordinance under which he was prosecuted, based on that statute, specifically reads: "* * * reinstatement of his license or issuance of a new *Nebraska* license." (Emphasis ours.)

Section 60-418, R. R. S. 1943, set out in full in the majority opinion forbids any resident or nonresident whose license has been suspended or revoked, to "operate a motor vehicle in this state under a license, permit or registration certificate issued by any other jurisdiction or otherwise during such suspension or after such revocation, until a new license is obtained when and if permitted under this act." It will be noted again that this statute specifically refers to both residents and nonresidents and does not refer to a Nebraska license, but only to a license obtained when and if permitted under the Motor Vehicle Operators' License Act.

The defendant's license here was revoked for a period of 1 year under section 39-7,128, R. S. Supp., 1965. The notice of revocation specifically read: "Any operation of a motor vehicle by you after the date of this notice, will constitute a violation of Nebraska Law for the duration of the revocation or thereafter, until proof of financial responsibility is furnished, as provided by law."

Section 39-7,133, R. R. S. 1943, provides: "It shall be unlawful to operate a motor vehicle on the public highways after revocation of an operator's license or privilege revoked under the provisions of sections 39-7,128 to 39-7,133. Any person violating the provisions of this section shall be punished as provided in sections 60-430.01 and 60-430.02. Any license, revoked under the provisions of sections 39-7,128 to 39-7,133, shall remain revoked for one year and at the expiration thereof such person shall give and maintain for three years proof of financial responsibility, as required by section 60-525."

Section 60-531, R. R. S. 1943, provides in part: "The nonresident owner of a motor vehicle not registered in this state may give proof of financial responsibility by filing with the department a written certificate or cer-

tificates of an insurance carrier authorized to transact business in the state in which the motor vehicle or motor vehicles described in such certificate is registered or, if such nonresident does not own a motor vehicle, in the state in which the insured resides, * * *."

It would seem quite clear from this section that while proof of financial responsibility is required of residents and nonresidents alike under the statute, the "new license" referred to in section 60-418, R. R. S. 1943, would necessarily and properly be a license from the state of residence of the individual involved. The fact that an operator's license and the furnishing of proof of financial responsibility are two separate and distinct things is quite apparent from section 39-7,133, R. R. S. 1943, as well as section 60-531, R. R. S. 1943.

Section 60-410, R. S. Supp., 1965, which is part of the same Motor Vehicle Operators' License Act states in part: "Nothing herein contained shall prevent a non-resident of this state from operating a motor vehicle upon the public highways of this state during the period within which he may lawfully operate such motor vehicle in this state under the provisions of the general motor vehicle laws of this state * * * *Provided,* that such non-resident motor vehicle operator is duly licensed under the laws of the state of his residence, or has complied with the laws of the state of his residence relating to the registration or licensing of motor vehicles and conformed to the laws of such state of residence in relation to the operators of motor vehicles; * * *."

It is quite clear that section 60-418, R. R. S. 1943, bars operation of a motor vehicle in Nebraska under any license from any state during the specific period for which the defendant's license has been suspended or revoked in all cases. It also forbids operation after such period of revocation until a new license has been obtained. The state of residence of the defendant at the time a specific period of revocation ended would, or

should be, the state to issue the license "permitted under this act."

The "new license" referred to in section 60-418, R. R. S. 1943, as to a nonresident of Nebraska and after the period for which his Nebraska license was specifically revoked has passed, should be interpreted as a license validly and legally obtained in the state of which the individual is then a resident, and the protection of section 60-410, R. S. Supp., 1965, should be extended to such a nonresident and the validity of such license recognized where proof of financial responsibility has been filed as required.

In this case, there is no proof whatever that the defendant did not file proof of financial responsibility under section 60-531, R. R. S. 1943. The evidence from the Department of Motor Vehicles was only that his Nebraska license had not been reinstated or a new Nebraska license issued as of the date of the arrest. Yet the crime involved a mandatory jail sentence.

Under the majority opinion, the revocation of a Nebraska motor vehicle operator's license for a specific period of 1 year becomes a permanent revocation as to anyone who has become a resident of another state, whether he has furnished evidence of financial responsibility or not and the validity of his new license from the state of his residence provided for by section 60-410, R. S. Supp., 1965, is destroyed. We do not believe the Legislature had any such intention.

Not only did the court refuse to admit the Missouri driver's license into evidence, but it instructed the jury that under the ordinances of the City of Lincoln, it was unlawful for any person to operate a motor vehicle after suspension or revocation and before reinstatement of his license or issuance of a new *Nebraska* license. Such an interpretation would seem to directly involve the due process and the privileges and immunities clauses of the United States Constitution, as to a resident of Missouri.

In any event, under the unusual factual circumstances here, a 30-day jail sentence was unjust and unreasonable.

BOSLAUGH, J., joins in this dissent.