**UNITED STATES of America,
Plaintiff,**

v.

**Stephen Lee BELL and Belinda Jo
Bentley Bell, Defendants.**

**Crim. No. 74–O–48.**

United States District Court,
D. Nebraska.

Oct. 23, 1974.

Thomas D. Thalken, Asst. U. S. Atty., D.Neb. for plaintiff.

---

Ron Minkin, Los Angeles, Cal., for defendant.

## MEMORANDUM

DENNEY, District Judge.

This matter has come before the Court upon the motion of the defendants to suppress evidence which was seized in an alleged illegal and unconstitutional manner [Filing #12].

The defendants are under an indictment consisting of three counts. Count I charged that on or about October 24, 1973, these defendants did knowingly and intentionally possess, with the intent to distribute, a controlled substance, in violation of 21 U.S.C. § 841(a)(1), to wit: 904 pounds, more or less, of marihuana. Counts II and III charge these same defendants in that they did knowingly and intentionally possess controlled substances, in violation of 21 U.S.C. § 844(a), to wit: cocaine and amphetamines.

The Court, being fully advised in the premises of the motion, recognizes that the issue before it demands a careful and thoughtful disposition. The question of main importance encompasses a constitutional issue of whether, in this case, the initial stop by Officer Compton in the propounded pursuit of his investigative duty of the defendants was in itself an unreasonable intrusion into their separate and joint expectation of privacy as protected by the Fourth Amendment of the United States Constitution.

## FINDINGS OF FACT

On October 24, 1973, at about 6:30 P. M., in the twilight of the evening, these two defendants were traversing the State of Nebraska on Interstate 80, heading east, with the front low beam lights of their vehicle on. Interstate 80 is a four lane divided highway, having a wide grassy median. Stephen Bell was driving at a lawful speed of sixty-five miles per hour. Approximately ten miles east of Ogallala, Nebraska, the defendants were directed by Officer Compton, a uniformed trooper of the Nebraska State Patrol, in a marked car, to pull over to the shoulder for the specific and exclusive reason that the officer could not see the front license plate on this 1973 Dodge van. The van did, in fact, exhibit both front and rear plates in an undamaged and unobstructed condition, cf. State v. Romonto, 190 Neb. 825, 212 N.W.2d 641, 643 [1973], involving the same trooper, but where a winch "covered or shielded the license plate."

The Court finds the specific details to be as follows. Officer Compton was proceeding west at fifty-five to sixty miles an hour on Interstate 80 when he saw the van in issue heading east in the outside lane. Thus, at a closing speed of nearly 120 miles per hour under dimly lit conditions, the officer contends that he would be and was capable of seeing and distinguishing a front license plate affixed below and between the low beam headlights of this van. Such a perceptive ability this Court seriously challenges. Officer Compton then crossed over the median to the east lanes of the interstate at an unmarked crossover. He caught up with the van and was about ten feet behind it in the same lane when Mr. Bell noticed the patrol car. The trooper then coasted his car into the left lane and positioned it to the left and completely in front of the van for a period of twenty to thirty seconds. He then motioned to Mr. Bell in a manner directing this defendant to stop his van on the shoulder area. After stopping as directed, Mr. Bell exited from the van on this chilly and windy evening, wearing no more than a long sleeved shirt, and met the officer at the rear of the patrol car. Officer Compton considered the fact that Mr. Bell approached the officer rather than vice versa as suspicious.

After proceeding to the front of this van and having the opportunity to see that the front license plate, bearing a California designation, was in fact intact and properly displayed, and which Mr. Bell also directed his attention to, Officer Compton then requested to see the driver's license of Mr. Bell. This

defendant then produced from his billfold a valid and current Arizona driver's license. Officer Compton, with no reason being given, then requested the motor vehicle registration certificate to the van. Officer Compton accompanied Mr. Bell back to the van and was positioned to the left and somewhat to the rear of Mr. Bell. The van registration, which was on the dashboard, was then solicited by Stephen Bell from Belinda Bentley Bell through the window on the passenger side. A valid California registration was then given to Officer Compton by Stephen Bell, followed by a note consenting to the use of this van by the registered owner, the brother of Belinda Bentley Bell, along with the driver's license of Belinda Bentley Bell. While Officer Compton was adjacent to the van and capable of observing the front seat area, there were no cigarette papers or other evidentiary residues manifesting any unlawful activity or any unlawful possession. However, Officer Compton contends that the air emanating from the passenger window, due to the pressure and force of the north wind, was permeated with the smell of smoldering marihuana. The positioning of the marihuana later found within the van supports a conclusion that the heat from the van's mid-engine rising over the marihuana would cause a distinct smell recognizable to a trained and sensitive nose.

After these initial contacts, the evidence and testimony is somewhat bifurcated. Either the officer was allowed access to the contents of the van through the exterior rear doors, which is denied by both defendants, or he ordered Stephen Bell to open the rear doors after finding that both the side and rear doors were locked. Mr. Bell had to retrieve the keys from the ignition in order to comply with the order of Officer Compton to open the rear door. After opening a suitcase of clothing near the rear door, the officer climbed into the van, sorted and rearranged the furniture that was in disarray within the van for a period of one or two minutes, and then emerged and arrested these defendants for possession of marihuana. In the front part of the storage compartment, near the mesh screen separating and segregating the passenger compartment, Officer Compton discovered 120 cartons, which were stapled and sealed, containing 904 pounds of marihuana. Officer Compton then directed Stephen Bell and Belinda Bentley Bell, accompanied with her purse, to the patrol car. He allegedly took the purse while in the car and sorted through its contents. Both defendants succumbed to the directives of the police officer and contend that at no time did they consent to or assist in a search of their personal belongings or the rear compartment of the van. They contend that at no time was permission even sought to conduct a search.

## CONCLUSIONS OF LAW

This Court does not intend to deter or derogate the perceptive and conscientious attitudes displayed by police officers in their good faith attempt to thwart and curtail drug traffic utilizing I-80 as an arterial to eastern terminals. However, the Court has an obligation to recognize overriding constitutional demands in analyzing the defense contention that the search of this van was illegal, since it was made through the subterfuge of a preintended and pretext investigation of a front license plate, which the officer did not initially "notice" or "see." After Officer Compton stopped in front of the van and met Stephen Bell at the rear of the patrol car, Officer Compton saw the front plate and his attention was additionally directed to it by Mr. Bell. Timely objection at the suppression hearing was properly made that an inquiry beyond this instant is and was unwarranted.

This Court, as a matter of abstention, explicitly abstains from comment on the constitutionality or scope of Nebraska Revised Statute, Ch. 60, § 435 [1943], in its unqualified and unconditional appli-

cation as contended by the Government in this case:

State patrol; powers and duties enumerated:

The superintendent and all members of the Nebraska State Patrol and all other peace officers mentioned in section 39–6, 192 shall have the power . . . (4) when in uniform, to require the driver thereof to stop and exhibit his operator's license and registration card issued for the vehicle and submit to an inspection of such vehicle, the registration plates and registration card thereon . . .

The defendants claim that the initial stop was a seizure in itself and that there was no showing of probable cause for stopping the vehicle which was being operated in a lawful manner. In addition, the defendants contend that the stop violated their right to travel freely in interstate commerce. The Court does not reach the second contention, as the first contention is dispositive.

■■ Officer Compton testified that he stopped the van for the sole and exclusive reason and purpose of ascertaining whether the van bore a front license plate. It is unreasonable to believe, according to an objective standard, that an able-bodied officer with the perceptive abilities required to hold such a responsible position, would have to stop a motor vehicle in order to see whether it bore a front license plate. The balance of the investigatory and routine procedures of the police in juxtaposition with the right of privacy in this case under the circumstances is tilted heavily in favor of the latter. Police activity denominated as "routine police procedure" is not, nor can it be, exempt from the restrictions imposed by the Fourth Amendment. United States v. Nicholas, 448 F.2d 622, 625 [8th Cir. 1971].

Though the Court perhaps unduly burdened the defendants at the suppression hearing under these warrantless circumstances by demanding that they go forward in showing that the utilization of the evidence seized would violate their Fourth Amendment rights, the Court finds that these defendants have sustained such a burden and that the Government has neither rebutted their presentation nor proved that such a seizure did not violate their rights. United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 [1951].

Schenker, "Nonarrest Automobile Stops: Unconstitutional Seizures of the Person", 25 Stan.L.Rev. 865 [1973], presents a basic, yet elucidating, disclosure of the law on the problem engulfing the case at hand. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 [1968], is the focal point in determining that a seizure occurs when an individual functioning under the color of law by physical force or a show of authority restrains or restricts another individual's liberty of movement or freedom to walk away. ". . . [S]ince an automobile stop inevitably restrains a motorist's liberty of movement, a policeman seizes the occupant of a moving car whenever he directs that the vehicle be stopped." op. cit., see Carpenter v. Sigler, 419 F.2d 169, 171 [8th Cir. 1969].

Terry v. Ohio, *supra*, 392 U.S. at 21–22, 88 S.Ct. at 1880, delineates to a great extent this Court's position:

And in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. . . . And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search "warrant a man of reasonable caution in the belief" that the action taken was appropriate? . . . Anything less would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches, a result this Court has consistently refused to sanction. . . . And simple "good faith on the part of the arresting officer is not enough."

Though this Court is uncertain as to the status of the law within the State of Nebraska due to the most recent memorandum opinion espoused by Spencer, J., of the Nebraska Supreme Court, in State v. Holmberg, No. 39680 [1974], (motion made by county attorney to a single Nebraska Supreme Court Justice pursuant to Section 29–824, R. R.S.1943, seeking a summary review of an order granting a motion to suppress certain evidence, which was reversed on this review and which also involved Officer Compton under very similar circumstances), the Court looks to State v. Smith, 181 Neb. 846, 152 N.W.2d 16, 21 [1967], as the more enlightened approach:

Every temporary restriction of absolute freedom of movement is not an illegal police action and courts have recognized the right of law enforcement officers *reasonably* and temporarily to stop vehicles and question occupants, even though the grounds for questioning might not amount to a basis for arrest or search. (Emphasis added). [Citations omitted].

This Court explicitly interprets such language to mean that there must be some founded grounds which draw or attract the attention of an officer to a possible violation of law. Even in State v. Smith, *supra,* the defendant was stopped for a signal light violation.

■ This Court would espouse a standard for intrusion, infringement, or molestation of an individual's right of privacy in cases of this nature only upon a showing of a reasonable and founded suspicion. United States v. Mallides, 473 F.2d 859 [9th Cir. 1973]; Brinegar v. United States, 338 U.S. 160, 179, 69 S.Ct. 1302, 93 L.Ed. 1879 [1949]; United States v. Carter, 369 F.Supp. 26 [E. D.Mo.1974]; Commonwealth v. Swanger, 300 A.2d 66 [Pa., 1973]. It is intolerable and unreasonable to allow or authorize a police officer to stop any vehicle on a pretext or in a selective manner through the utilization of a state driver's license statute or motor vehicle registration or safety statute, on the chance that such officer might perceive illegal activity; such an inconvenience and indignity is not outweighed by an overriding governmental interest.

The Court has reviewed the status of the law within this circuit and has examined numerous cases of other jurisdictions. It has paid particular attention to United States v. Nicholas, supra:

Implicit in the government's argument that the police were merely performing routine investigation is the theory that the police, under Missouri law, are permitted to approach the driver of any vehicle for purposes of examining his driver's license, even without meeting the standards of *Terry.* If the police had such power, we would be hard pressed to declare that the power could be obviated merely by the fact that the officer makes his approach on the basis of other suspicions. *See,* United States of America v. Turner, 442 F.2d 1146 [8th Cir. 1971]. *Turner,* also involving an arrest under Missouri law, addressed itself to this point; but there the parties assumed that the police had such power. [Footnote: Our examination of Missouri law indicates that there is no general power, either by virtue of statute or common law, to approach the driver of any vehicle absent suspicious circumstances. See, V.A.M.S. §§ 43.160, 43.220; 85.230; 85.340 and 85.561]. No such concession was made here; rather, the right of the police to approach a driver under these circumstances is hotly contested. Id. 448 F.2d at 626.

This Court would be less than candid if it did not explicitly state that it aligns itself with the decision of United States v. Carter, *supra,* in that "The Court considers *Nicholas, supra,* more as support for its conclusion than as contrary authority." Id. 369 F.Supp. at 30.

This Court adamantly believes that the action of Officer Compton in this selective stop was unjustified in its inception. Upon review of the numerous

cases, decided and pending, in this district and the reported State decisions involving this officer with the same factual presentation, the Court believes that, at best, Officer Compton was acting upon a generalized suspicion that a van utilizing the interstate system heading east with out-of-state license plates, particularly from California or the Southwest, and being driven by a youthful driver might be engaged in criminal drug-related activity. Constitutional intrusions of this magnitude based upon such an unfounded belief can neither be outweighed nor countered by a governmental interest. This is particularly true under the conditions of this case, since there were no ostensible violations of the driving safety laws or the motor vehicle inspection and operation laws.

It is reasonable under these facts to believe that Officer Compton had the ability to see whether this motor vehicle bore an unobstructed front license plate without stopping the van. There was neither a violation of law nor suspicious activity present in this case as distinguished from numerous similar cases like United States of America v. Brian Matthew McClain, Cr. 74–0–49 [D.Neb. Sept. 13, 1974], (high rate of speed in excess of the lawful speed limit); Orricer v. Erickson, 471 F.2d 1204 [8th Cir. 1973] (early morning stop immediately subsequent to a burglary attempt in an inactive and quiet small town wherein a police officer had probable cause to arrest from an identification obtained at the situs of the crime); Carpenter v. Sigler, *supra* (a small town plagued by a series of burglaries where in the early morning hours an unidentified and unrecognized car appeared to be casing business establishments); United States v. Wickizer, 465 F.2d 1154 [8th Cir. 1972] (the officer's concern over previous rapes at night in the area and his impression of the frightened appearance of the two young girls in the back seat of the automobile that was, in fact, missing a front license plate). Such cases are substantially different than the case at hand.

This Court has deferred from ruling on the constitutionality of the Nebraska Revised Statute, Ch. 60, § 435(4) in deference to the Nebraska Supreme Court, in the hope that such court, *en banc*, will meet the contentions exhibited in this factual situation. This Court, in considering future cases, will narrowly construe such a statute to the extent that there must be a founded and reasonable suspicion drawing an officer's attention in order for him to pursue a selective stop which infringes, intrudes, or molests an individual's expectation of privacy guaranteed under the Fourth Amendment.

For the reasons delineated herein, an order will be entered suppressing any and all evidence seized from Stephen Bell and Belinda Bentley Bell and the 1973 Dodge van in this case, for the reason that the intrusion executed by Officer Compton under the sole facts of this case was unfounded and unreasonable under the Fourth Amendment of the United States Constitution.