Stuart CARPENTER, Appellant,

v.

Maurice SIGLER, Appellee.

No. 19668.

United States Court of Appeals
Eighth Circuit.

Dec. 23, 1969.

Rehearing Denied and Rehearing En
Banc Denied Jan. 20, 1970.

William G. Line, Fremont, Neb., for
appellant.

C. C. Sheldon, Asst. Atty. Gen., Lincoln, Neb., for appellee; Clarence A. H.
Meyer, Atty. Gen., Lincoln, Neb., with
him on the brief.

Before VAN OOSTERHOUT, Chief
Judge, and MATTHES and HEANEY,
Circuit Judges.

VAN OOSTERHOUT, Chief Judge.

Stuart Carpenter has taken a timely
appeal from the denial by the District
Court (Judge Van Pelt) of his petition
for habeas corpus under 28 U.S.C.A. §

2241. Carpenter was convicted by the state court of burglary in violation of § 28–532 R. S. Nebraska and possession of burglary tools in violation of § 28–534 R. S. Nebraska. Concurrent sentences of three-years imprisonment were imposed. The conviction was affirmed, State v. Carpenter, 181 Neb. 639, 150 N.W.2d 129.

Carpenter contends that certain burglary tools were improperly received in evidence at his trial because they were obtained as a result of an unlawful search and seizure in violation of his Fourth Amendment constitutional rights. The trial court, after an evidentiary hearing, rejected such contention setting forth the basis of its decision in a well-considered memorandum opinion. (Not reported.)

■ We hold that the court's findings upon which its dismissal order is based are supported by substantial evidence and that its decision was not induced by any erroneous view of the law. We affirm.

The basic facts, with respect to which there is no substantial dispute, as found by the trial court may be summarized as follows:

Early on the morning of April 12, 1966 at approximately 3:30 a. m. officers Sam Austin and William Cowan of the Blair, Nebraska, city police department were patrolling the streets of that city. Blair is a town of approximately 2,000 persons which at the time of this incident had been plagued by a series of burglaries. The officers noticed a car containing two men driving slowly through the streets, located off the main highway, in Blair. The officers did not recognize the car and noticed that it had out of county license plates. The officers kept the vehicle under surveillance for a period noticing it slowly move by several business establishments which were closed. Then by the use of their flashing red light, the officer signaled the driver to pull the vehicle to the curb. No traffic violation was observed. The driver of the auto complied with the flashing red light and the cars stopped with the police car approximately twenty-five feet behind the other auto.

The driver of the auto alighted from his vehicle and went back to the police car, while the passenger remained seated in the car. The driver produced a valid Nebraska drivers license which identified him as Stuart Carpenter, the petitioner in this action.

While Carpenter was talking to officer Austin, officer Cowan left his position in the police car and proceeded to the passenger side of the Carpenter auto where Sherman Hawkins was sitting. Officer Cowan asked Hawkins to step out of the car. To this request Hawkins complied and while getting out of the car, Hawkins evidently bumped some object on the floor of the vehicle which gave a noise of metal hitting metal. Officer Cowan heard this sound and shined his light inside thereby seeing the ends of two pry bars sticking out of a sack on the floor of the car. Upon getting out of the car, Hawkins was searched for weapons by officer Cowan.[1] No weapon or other incriminating evidence was found.

Officer Cowan then asked Hawkins to step to the rear of the car where officer Austin was talking to Carpenter. At this time all four men were in the light provided by the headlights of the police car. Officer Cowan then asked officer Austin to look in the Carpenter auto. Austin walked forward to the car and shined his light into the vehicle and observed assorted tools on the floor and gloves on the front seat.

After seeing the tools in the car, officer Austin returned to the others and asked Carpenter and Hawkins why they had the tools in their possession. Carpenter replied that they were used in his business. The officer then asked Carpenter why he was in the area, and he replied that he was looking for a man named Jimmy Ward.

---

1. We express no opinion on the legality of this search.

Officer Cowan then asked Carpenter to drive to the police station, which he did. The officer contacted the county sheriff who came to the station and recognized Hawkins as a "known burglar." Carpenter and Hawkins were then locked in the county jail and their car left in front of the Blair police station over night. Nothing was removed from the car. The next morning a warrant was obtained for a search of the car reciting probable cause to believe that the auto contained burglary tools.

The search of the auto revealed numerous tools that could be used in a burglary and especially a broken screwdriver handle which matched a broken screwdriver found at the scene of the burglary for which the pair were convicted. The tools seized under the warrant were introduced at the trial of the petitioner for burglary and possession of burglary tools. It is the use of these tools in evidence which is the basis of the petitioner's claim for relief.

It is argued in this case that the petitioner's Fourth Amendment[2] rights were violated when the police stopped his car and eventually found burglary tools in his possession. The issue can only be resolved by an examination of the police activity in this case in light of the Fourth Amendment principles.

■ The Supreme Court has recognized that the protection of the Fourth Amendment applies at all times whenever an individual has a reasonable expectation of privacy. Katz v. United States, 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576. It is quite clear that a person driving an automobile has such an expectation and is therefore protected by the Fourth Amendment. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142; Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543. There is no doubt that petitioner was protected by the Fourth Amendment

when he drove through the streets of Blair, Nebraska.

The Fourth Amendment provides:

"[T]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."

The important Fourth Amendment issues therefore are whether there was a "search" or "seizure" or both in this case and whether they were "reasonable."

The Supreme Court recently in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, defined the Fourth Amendment term seized for the purpose of police-citizen street encounters. The Court said:

"It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." 392 U.S. 1, 16, 88 S.Ct. 1868, 1877.

It would appear from the record in this case that Carpenter was "seized" when the police officers signaled him to pull to the curb by the use of their flashing red light. The question then becomes whether this "seizure" was "reasonable" under the Fourth Amendment.

The Court in *Terry* indicated that the judicial inquiry into the question of "reasonableness" is a dual one. A reviewing court must objectively evaluate the "specific and articulable facts which, taken together with rational inferences from those facts" and determine: (1) whether the facts warranted the intrusion on the individual's Fourth Amendment rights, and (2) whether the scope of the intrusion was reasonably related "to the circumstances which justified the interference in the first place."[3]

■ In applying the *Terry* analysis to the facts of this case, it seems clear that the police officers were "reasonable" in the initial "seizure" of Carpenter. It was an early morning hour in a

---

2. Made applicable to the states by the Fourteenth Amendment.

3. The state concedes that no probable cause for arrest existed prior to the time of the observation of the burglary tools.

small town where unidentified cars do not routinely travel at that time. The car had out of county license plates. There had been a series of burglaries in the town. During the period of surveillance by the officers the car moved very slowly past closed business establishments and pursued a rather erratic course through the streets of the town. These facts taken together all point to sufficient justification for stopping the Carpenter auto and requiring the occupants to identify themselves.

The next question under the *Terry* analysis is whether the scope of the "seizure" was reasonably related to the circumstances which justified the interference in the first place.

■ The problem of the scope of the intrusion focuses the analysis on the request by officer Cowan for Hawkins to get out of the car. Officer Cowan testified that he requested Hawkins to get out of the car so he could identify him. This, of course, could have been done by the officer requesting Hawkins to hand him his identification through the window. This would seem to indicate that the officer went beyond the scope of the original intrusion. However, when the request for identification is considered with the unusual circumstances justifying the stop plus the darkness and the possibility that Hawkins was holding a gun inside the car beyond the sight of officer Cowan, the request to get out of the car seems reasonable in light of the circumstances. See Wilson v. Porter, 9 Cir., 361 F.2d 412.

The last aspect of the problem of the scope of the seizure of Carpenter is whether the police were reasonable in taking him to the police station after they saw what appeared to them to be burglary tools in the petitioner's auto.

It has always been held that it is reasonable to "seize" a person and take him into custody if there is probable cause to arrest[4] for a public offense. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879; United States v. Skinner, 8 Cir., 412 F.2d 98; Klingler v. United States, 8 Cir., 409 F.2d 299. The question becomes was there probable cause for arrest.

■ We hold that probable cause did exist for an arrest for possession of burglary tools under § 28–534 R.S. Nebraska. The probable cause was supplied by the hour of the encounter, the absence of explanation of why the tools were in the petitioner's possession, the location of the tools in the front of the auto under the seat rather than in a tool box in a more conventional place, and the series of burglaries which had taken place in Blair prior to the morning in question.

Once it has been shown that the police conduct was reasonable up until the car was searched incident to a valid search warrant, the seizure of the evidence by the use of the warrant can only be held constitutionally valid.

■ It follows from our holding that the stopping of the car and the subsequent request for Hawkins to get out of the car was proper, that officer Cowan could constitutionally observe the burglary tools on the floor of the car because they were in "plain view". Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067; Creighton v. United States, 132 U.S.App.D.C. 115, 406 F.2d 651; Davis v. United States, 9 Cir., 327 F.2d 301. Since the tools were properly observed, the observation could supply the basis for probable cause for arrest and the issuance of a search warrant to seize them.

Since the evidence was validly seized, it could be introduced into evidence at the petitioner's trial. The judgment of the trial court denying habeas corpus relief is affirmed.

4. Arrest is used in the constitutional sense here to mean that the person has probable cause to believe the person arrested (1) committed a crime (2) was in the process of committing a crime (3) was about to commit a crime (attempt). See Terry v. Ohio, 392 U.S. 1, 35, n. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (dissenting opinion.)