**UNITED STATES of America,
Appellee,**

v.

**George Willie NICHOLAS, Jr., Appellant.**

**No. 20574.**

United States Court of Appeals,
Eighth Circuit.

Sept. 9, 1971.

Gary S. Heifetz, St. Louis, Mo., for appellant.

Robert B. Schneider, Asst. U. S. Atty., Daniel Bartlett, Jr., U. S. Atty., St. Louis, Mo., for appellee.

Before VAN OOSTERHOUT, HEANEY and ROSS, Circuit Judges.

HEANEY, Circuit Judge.

This direct appeal presents the question which the United States Supreme Court reserved in Terry v. Ohio, 392 U. S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968): namely, whether an investigative "seizure," upon less than probable cause, for purposes of "detention" and/or interrogation is constitutionally permissible.

Shortly after 11:00 on the night of June 11, 1970, three St. Louis City police officers were on routine patrol in an area of the city known for its high incidence of narcotics traffic. The officers halted their car in a parking lot. Upon doing so, they noticed a 1970 Cadillac El Dorado, with Nevada license plates, parked in front of a nearby pool hall. A single black male, Oliver Sims, was seated in the car on the passenger's side. After several minutes, a second black male, George Willie Nicholas, the defendant herein, emerged from the pool hall and entered the Cadillac on the driver's side. The police thereupon drove their car up behind the Cadillac and got out of the squad car. Two officers went to the driver's side of the Cadillac, and one to the passenger's side. The officers' purpose, as stated at the hearing on the defendant's motion to suppress evidence, was to question Nicholas regarding the Nevada license plates and his presence in the area. Officer Loehr knocked on Nicholas's window, flashed his badge, and ordered Nicholas to roll down his window. As the window was lowered, Loehr smelled what he believed to be the odor of burned marijuana. Loehr thereupon placed Nicholas and Sims under arrest for violation of Missouri narcotics laws and conducted a search of the car. Stolen cashier's checks were found in the trunk.

Nicholas was tried and convicted by a jury in federal court of unlawful possession of the checks in violation of 18 U. S.C. § 2113(c). The checks and certain statements made by Nicholas were admitted into evidence following denial of Nicholas's motion to suppress.

On these facts, we must decide whether the trial court properly admitted into evidence the checks found in the trunk at the time of Nicholas's arrest, and the statements made by Nicholas.[1] In doing so, we must determine whether the police officers acted beyond the scope of their constitutional authority in detaining Nicholas for questioning. If the police were in violation of his Fourth Amendment rights at the time they smelled the marijuana, the fruits of the search must be held inadmissible.[2] Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). See, Morales v. New York, 396 U.S. 102, 90 S.Ct. 291, 24 L.Ed.2d 299 (1969); Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). Cf., Rios v. United States, 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688 (1960).

It is clear that the police did not have probable cause to arrest Nicholas at the time they stationed themselves on either side of his automobile. But the government argues that the police may, under certain circumstances, momentarily detain, or "seize," a person for questioning on less than probable cause. It urges

1. We must affirm the lower court's finding provided it is based on substantial evidence and no clear error appears. Gullett v. United States, 387 F.2d 307 (8th Cir. 1967), cert. denied, 390 U.S. 1044, 88 S.Ct. 1645, 20 L.Ed.2d 307 (1968).

2. In view of our disposition of this threshold issue, we need not consider the government's contention that Nicholas consented to the search of his car, or Nicholas's contention that the government failed to prove that the value of the stolen checks was in excess of $100, as required by statute.

that such circumstances existed here, see, Terry v. Ohio, *supra*; United States v. Harflinger, 436 F.2d 928 (8th Cir. 1970); Carpenter v. Sigler, 419 F.2d 169 (8th Cir. 1969), and that if the police had the right to stop Nicholas for questioning, the subsequent search of the car, including the trunk, was proper.

We agree with the government's statement of the law, but not with its application to this case.

■ We think it clear that the police action here amounted to a "seizure" within the meaning of the Fourth Amendment as interpreted by *Terry* and *Carpenter*.[3] Even though Nicholas may have been physically free to drive away when the officers stationed themselves on either side of Nicholas's car and flashed their badges, we find that the actions of the officers constituted sufficient show of authority to restrain Nicholas's freedom of movement.

We recognize that in *Terry* the defendant was stopped and frisked, and that here the search occurred only after the officers smelled marijuana, which the government contends gave them probable cause to arrest. But we do not think this distinction a relevant one. The Supreme Court in *Terry* "emphatically rejected" the notion that police conduct amounting to a stop is outside the purview of the Fourth Amendment. Thus, the "seizure" of Nicholas must be judged according to *Terry* standards.

In determining whether the seizure of Nicholas violated his Fourth Amendment rights, we are required, under *Terry*, to make a dual inquiry:

(1) whether the officers' action was justified at its inception, and

(2) whether it was reasonably related in scope to the circumstances which justified the interference in the first place.

■ In undertaking the first step in this dual inquiry, we follow the standard laid down by the Supreme Court for determining whether the "seizure" of Nicholas was justified:

"* * * [I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. * * * And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate? * * *"

Terry v. Ohio, *supra* at 21, 88 S.Ct. at 1880. See also, United States v. Harflinger, *supra*.

■ Judged against this standard, the officers were not justified in initially stopping Nicholas for questioning. In reaching this conclusion, we are impressed with the following observations:

(1) the police were not investigating any particular crime;

(2) the police had no information respecting the car or its occupants;

(3) there is no showing in the record that the police had been informed of suspicious activities in the vicinity of the pool hall at the time of Nicholas's arrest, aside from their general knowledge that the area was highly trafficked in narcotics;

3. Our Court has already determined that a person is "seized" within the meaning of *Terry* when a police officer signals him to pull his car to the curb by the use of a flashing red light. Carpenter v. Sigler, 419 F.2d 169 (8th Cir. 1969). See also, United States v. Harflinger, 436 F. 2d 928 (8th Cir. 1970). Additionally, *Terry* states:

"* * * It must be recognized that whenever a police officer accosts an in-

dividual and restrains his freedom to walk away, he has 'seized' that person. * * *"
Terry v. Ohio, 392 U.S. 1, at 16, 88 S.Ct. 1868, at 1877, 20 L.Ed.2d 889 (1968). A seizure may be accomplished either by physical restraint or by sufficient show of authority. Terry v. Ohio, *supra* at 21, n. 16, 88 S.Ct. 1868.

(4) the police observed the car for a very short time, during which time Sims sat quietly until Nicholas came out of the pool hall and entered the car;

(5) the hour, 11:15 p. m., was a reasonable hour for individuals to be abroad on the streets on a June evening;

(6) Nicholas and Sims were black men in a predominantly black area;[4]

(7) the fact that a car has out-of-state license plates does not, of itself, indicate criminal activity. See, Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

In light of these facts, we think that, at best, the police were acting upon a generalized suspicion that any black person driving an auto with out-of-state license plates might be engaged in criminal activity. The momentary detention of a citizen for questioning is not permitted on such scant basis. There are no reasonable inferences to be drawn from these facts which would warrant any police intrusion on Nicholas's Fourth Amendment rights. See, Sibron v. New York, *supra.*

The government attempts to justify the seizure on the basis that it was "merely routine police procedures for purposes of investigating suspicious circumstances and did not amount to an arrest." In doing so, it relies primarily on United States v. Harflinger, *supra,* and Carpenter v. Sigler, *supra.*

We believe that both these cases require a result contrary to that pressed for by the government. Nothing in these cases suggests that, by addition of the talismanic words "routine police procedure," police activity becomes exempt from the restrictions imposed by the Fourth Amendment. On the contrary, both *Harflinger* and *Carpenter* rely heavily upon the *Terry* view that police interference with citizens must be based upon "specific and articulable facts which, taken together with rational inferences from those facts, reasonably

warrant" the intrusion. While *Harflinger* and *Carpenter* found that the police were justified in stopping a car to question its occupants, the facts in those cases warranted the intrusion.

In *Harflinger,* the police possessed the following facts at the time they made the stop:

(1) the car was licensed to a St. Louis owner but was in the vicinity of a small town approximately four and one-half hours' drive from St. Louis;

(2) the car had been seen at 4:30 in the morning parked crosswise on the highway, shining its lights on a barn owned by a liquid petroleum dealer;

(3) the dealer had been warned to watch out for his equipment;

(4) the car was observed later in the morning about one-half mile from the dealer's petroleum storage tank;

(5) tracks were found around the dealer's petroleum storage tank, located on private property, indicating that a car had driven around the tank and that someone wearing boots with distinctive lugged soles had walked around the tank and reentered the car;

(6) one of the occupants of the car had been observed to be wearing boots with lugged soles identical to those which made the tracks.

In *Carpenter,* the officers possessed these facts at the time they made the stop:

(1) the car was seen in a small town of approximately 2,000 persons;

(2) the car bore an out-of-county license plate;

(3) the officers did not recognize the car;

(4) the town had recently been plagued by a series of burglaries;

(5) the car was not on the main highway;

(6) the officers observed the car for some time while it drove slowly through

---

4. We attach no particular significance to this fact. We merely point out that it would not be unusual to see black men in a predominantly black area.

the streets past several closed business establishments;

(7) all the above occurred at 3:30 a. m.

A comparison of the facts of the two above cases with those in the case before us shows that they are totally dissimilar.

Implicit in the government's argument that the police were merely performing routine investigation is the theory that the police, under Missouri law, are permitted to approach the driver of any vehicle for purposes of examining his driver's license, even without meeting the standards of *Terry*. If the police had such power, we would be hard pressed to declare that the power could be obviated merely by the fact that the officer makes his approach on the basis of other suspicions. See, United States of America v. Turner, 442 F.2d 1146 (8th Cir. 1971). *Turner*, also involving an arrest under Missouri law, addressed itself to this point; but there the parties assumed that the police had such power.[5] No such concession was made here; rather, the right of the police to approach a driver under these circumstances is hotly contested. In any event, the government made no contention that the police acted pursuant to any general power to question the driver of a vehicle absent suspicious circumstances. Consequently, we reserve decision on constitutional questions that might arise from the application of such a state law.

Having decided that the police officers' action was unjustified at its inception, we need not consider whether the scope of the action was permissible.

 We hold that the District Court erred in denying Nicholas's motion to suppress evidence. We hold further that this error requires reversal of his conviction. Without the checks and statements, it appears from the record that the government would have had no evidence to convict Nicholas. Thus, by any standard, the admission of these items of evidence was clearly prejudicial.

The judgment of conviction is, therefore, reversed and the case is remanded for further proceedings.

---

5. Our examination of Missouri law indicates that there is no general power, either by virtue of statute or common law, to approach the driver of any vehicle absent suspicious circumstances. See, V.A.M.S. §§ 43.160–43.220; 85.230; 85.340; and 85.561.