**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Gary Richard LOVENGUTH and Lynn Brian Lovenguth,**
**Defendants-Appellants.**

**No. 74–1948.**

United States Court of Appeals,
Ninth Circuit.

Feb. 3, 1975.

---

Mary L. Frelder (argued), Los Angeles, Cal., for defendants-appellants.

John Resich, Asst. U. S. Atty. (argued), for plaintiff-appellee.

Before DUNIWAY and ELY, Circuit Judges, and SOLOMON,* District Judge.

## OPINION

PER CURIAM:

Gary and Lynn Lovenguth appeal from a judgment of conviction based on a jury verdict. They had been charged under 21 U.S.C. § 841(a)(1) for possession of marijuana with intent to distribute. They assert that the trial court erred in denying their motions to suppress evidence after an allegedly illegal stop and search of their pickup truck. We affirm.

On November 6, 1973, David Morrison, a security officer for Dart Industries, was patrolling in a rural area near Helendale, California. At about 10:10 P.M., he heard an airplane flying overhead at a low altitude. He could not see the plane because its running lights were off. He listened as the plane flew toward and landed at the Helendale airport, an abandoned airstrip about two and one-half miles away.

Morrison then drove with his lights out along the narrow dirt road which passes the airport. He stopped about three-quarters of a mile from the airport and waited. At about 10:30, he heard an airplane rev up and take off. After the plane was in the air, it turned on its lights and dropped a flare over the airport.

At about 10:40, Morrison saw a vehicle with its lights on proceeding down the road from the airport. He positioned himself so that he could get a good view of the vehicle when it passed him. He saw a green 1973 or 1974 Chevrolet pickup truck with two people in the cab. The pickup had a white Gem-type camper top and no license plates.

Morrison suspected that an illegal "drop" had been made at the airport and that the pickup contained contraband. He called the Victorville Sheriff's Department and described all that he had seen to Sgt. Trueax. At about 10:45, Sgt. Trueax broadcast a radio bulletin about the suspected drop. The report described the vehicle as a late model green Chevrolet pickup with a Gem-type camper top and no license plates and advised police units to be on the lookout for it.

When Deputy Sheriff Leroy Morgan received the radio call, he drove toward

* Honorable Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation.

the airport. A few minutes later, when he was about nine miles from the airport, he saw a pickup which fitted the broadcast description. Morgan made a U-turn, followed the pickup for about five miles and then stopped it. The pickup had committed no traffic or equipment violations.

The driver, Lynn Lovenguth, met Morgan at the left rear of the pickup. Upon request, Lynn showed Morgan his California driver's license. When Morgan asked who owned the pickup, Lynn replied that it was a friend's, but he could not give the friend's name. Morgan then asked for the registration, and the passenger, Gary Lovenguth, produced it from the glove compartment. The pickup was registered to a person named Huntington. Morgan smelled marijuana during his conversation with Lynn.

Morgan asked if he could look into the camper. Lynn said it was locked and he did not have the key. Morgan asked Lynn for the keys to the pickup to see if the camper key was attached. Lynn said the keys were in the ignition, but the keys were not there. Lynn then said Gary probably had the keys, but Gary did not have them. The brothers gave conflicting accounts of where they had been. Morgan arrested both men for grand theft of a truck and put them in the custody of another officer.

Using his flashlight, Morgan then looked into the camper through a small opening in the brown paper that covered the inside of the rear window. He saw green plastic bags sealed with what appeared to be masking tape. He also saw some wooden stakes with red reflectors on them. He suspected that the green plastic bags contained marijuana.

Morgan summoned a locksmith who opened the camper. It contained 1,122 pounds of marijuana. The Lovenguth brothers were told that they were also under arrest for possession of marijuana. The pickup was towed to the sheriff's headquarters.

The Lovenguths were indicted under 21 U.S.C. § 841(a)(1) for possession of marijuana with intent to distribute.

Their motion to suppress was heard and denied by the trial judge on April 9, 1974.

In this appeal the Lovenguths contend that both the stop of the pickup and the search of the camper were illegal. We disagree.

■■ Morgan is a state officer. The propriety of the stop must therefore be tested under the standards of both California and Federal law. United States v. Walling, 486 F.2d 229, 235 (9th Cir. 1973). The officer must have a "rational suspicion" that "some activity out of the ordinary is or has taken place", that the subject under scrutiny is connected with the unusual activity, and that the activity is related to crime. People v. Henze, 253 Cal.App.2d 986, 61 Cal.Rptr. 545, 547 (1967).

■ This Court in Wilson v. Porter, 361 F.2d 412, 415 (9th Cir. 1966), set forth the federal standard. ". . . [D]ue regard for the practical necessities of effective law enforcement requires that the validity of brief, informal detention be recognized whenever it appears from the totality of the circumstances that the detaining officers could have had reasonable grounds for their action. A founded suspicion is all that is necessary, some basis from which the court can determine that the detention was not arbitrary or harassing." See Wade v. United States, 457 F.2d 335 (9th Cir. 1972); cf. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

■ Here, an unlighted airplane landed at an abandoned airport in a rural area. The plane left about twenty minutes later, again without lights. About five minutes later, a pickup truck with a camper top left the airport. Morrison suspected that the pickup camper contained contraband from a "drop"; he notified the authorities.

Morgan heard the radio broadcast containing the report of the suspected drop and the description of the pickup. Within a few minutes, Morgan met a pickup which matched the broadcast description. It was coming from the direction of the airport.

The evidence here amply supports a finding that Morgan's temporary detention of the pickup was justified by his "rational" and "founded" suspicion that the pickup had been involved in the commission of a crime.

The search that followed the stop was also legal. Morgan detected the odor of marijuana as he stood beside the pickup, and he saw green plastic bags in the camper. Morgan had probable cause to conduct the search. United States v. Campos, 471 F.2d 296 (9th Cir. 1972); Fumagalli v. United States, 429 F.2d 1011 (9th Cir. 1970).

The Lovenguths contend that even if Morgan had probable cause to search the camper, the search was illegal because it was made without a search warrant.

■ The Fourth Amendment requires that searches be reasonable. Generally, every search must be authorized by a warrant. A warrantless search is legal, however, in special situations. In Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), the Supreme Court held that a search warrant was unnecessary when there was probable cause to search an automobile stopped on the highway.

■ The Lovenguths contend that the Carroll rule does not apply here because they were already in custody when the officers searched the pickup camper. They argue that the officers should have just held the pickup truck until they obtained a search warrant. This argument overlooks Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).[1]

In Chambers, the police stopped an automobile which matched the description of an automobile used in a service station robbery. The police arrested the driver and the passengers. Then the police took the automobile to the police station where a search disclosed incriminating evidence. The Court upheld the warrantless search even though it was conducted at the police station and after all the automobile's riders had been arrested.

The Lovenguths argue that the officers should have seized the automobile and obtained a search warrant, rather than conduct a warrantless search. In rejecting this argument, the Chambers Court said:

". . . For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment.

". . . [T]here is little to choose in terms of practical consequences between an immediate search without a warrant and the car's immobilization until a warrant is obtained." 399 U.S. at 52, 90 S.Ct. at 1981.

We hold the search was valid and affirm the convictions.

---

1. Appellants rely on Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). In our view the facts here are much closer to those of Chambers, and we believe Chambers is controlling.