UNITED STATES of America, Appellee,

v.

Zebedee Richard COLLINS, Appellant.

No. 75–1684.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 14, 1976.

Decided March 5, 1976.

J. Arnot Hill, Hill & Gamm, Kansas City, Mo., for appellant.

Albert D. Hoppe, Asst. U. S. Atty., Kansas City, Mo., for appellee. Bert C. Hurn, U. S. Atty., also appeared on brief.

Before HEANEY, ROSS and WEBSTER, Circuit Judges.

ROSS, Circuit Judge.

Zebedee Richard Collins was found guilty by a jury of participating in a robbery of the Bank of Lee's Summit in Lee's Summit, Missouri, on January 17, 1975, in violation of 18 U.S.C. §§ 2 and 2113(a). On this appeal Collins challenges only the failure of the trial court to suppress evidence obtained in a search of a car driven by Collins on the day of the robbery. We affirm the refusal to suppress and the conviction.

Collins challenges the validity of the search on four grounds:

1. The initial stop of his car by the officer and his temporary detention was an unlawful arrest without probable cause.

2. The second stop and arrest of Collins by the same officer a few minutes later was an unlawful arrest without probable cause.

3. The search warrant obtained for the search of the car was invalid because of the insufficiency of the warrant affidavit.

4. The search was not valid without a warrant as incident to a valid arrest.

We discuss the facts and our holding as to each point seriatim.

## 1. The Initial Stop.

The Bank of Lee's Summit in Lee's Summit, Missouri, was robbed of $34,090.00 at gunpoint by three black males shortly before noon on January 17, 1975. Field Sergeant Gary Short, of the Lee's Summit police force, heard a report on his radio at 11:55 a. m. that "The bank of Lee's Summit has been robbed. The subjects would be three Negro males left in a light brown late model Cadillac." At about 12:05 p. m. Short stopped a white over gold or brown 1969 Cadillac being driven by Collins, a black male, about three miles from the bank. Collins did not have a driver's license but identified himself with a felon registration form made out in the name of Larry D. Roby and a birth certificate showing the same name. The officer asked Collins, who was traveling alone, for permission to search the car, which was granted. However, Collins claimed not to have a key to the trunk. Collins was wearing a black motorcycle jacket at the time. Short did not "harass" Collins during this stop and after discussing the matter with two other officers who had arrived at the scene, Short let Collins proceed.

 The first question we must determine is whether the initial stop was an arrest or an investigative stop. In so doing we must consider the circumstances of the temporary detention. Here Short stopped Collins, asked for identification and after being shown a felon registration slip which Collins claimed as his own, told Collins of the reason for the stop, asked permission to search the car and received it. After completing a very perfunctory search, except for the trunk, and even though Collins had no driver's license, shortly thereafter he let him go on his way. Under these circumstances we believe the initial stop amounted to an investigatory stop or seizure but not an arrest.

In *Terry v. Ohio,* 392 U.S. 1, 22–23, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906 (1968), the Supreme Court indicated that the fourth amendment permitted certain "seizures" of the person on less than probable cause. The Court differentiated between these investigative seizures and arrests which were undertaken for the purpose of taking a person into custody and prosecuting him for a crime. *Id.* at 16, 88 S.Ct. at 1877, 20 L.Ed.2d at 902. And in *Adams v. Williams,* 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612, 617 (1972), the Court elaborated, stating: "A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." In this case it is clear that Short detained Collins temporarily to investigate further because of the similarity between his car and the description over the police radio. Such conduct has frequently been justified as an investigative stop. *E. g. United States v. Lovenguth,* 514 F.2d 96, 98–99 (9th Cir. 1975); *Johnson v. Wright,* 509 F.2d 828, 829 (5th Cir.), *cert. denied,* 423 U.S. 1014, 96 S.Ct. 445, 46 L.Ed.2d 384, 44 U.S.L.W. 3344 (1975); *United States v. Hernandez,* 486 F.2d 614, 616–617 (7th Cir. 1973), *cert. denied,* 415 U.S. 959, 94 S.Ct. 1488, 39 L.Ed.2d 574 (1974); *United States v. Mallory,* 460 F.2d 243, 247 (10th Cir.), *cert. denied,* 409 U.S. 870, 93 S.Ct. 197, 34 L.Ed.2d 120 (1972); *Application of Kiser,* 419 F.2d 1134, 1136 (8th Cir. 1969). Our conclusion that this was not an arrest is borne out by the fact that the policeman allowed Collins to proceed when his investigation did not result in probable cause for further detention at that time.

The second question we must answer is whether the initial detention or seizure was

justified at its inception based on the arresting officer's knowledge at the time of the stop. Collins relies on *United States v. Nicholas,* 448 F.2d 622 (8th Cir. 1971), claiming that since there was only one person in the car and since the color of the car did not exactly match the description given on the radio, the action was not justified. We think his reliance on *Nicholas* is misplaced. In that case we held that the initial stop was not justified and gave the following reasons:

(1) the police were not investigating any particular crime;

(2) the police had no information respecting the car or its occupants;

(3) there is no showing in the record that the police had been informed of suspicious activities in the vicinity of the pool hall at the time of Nicholas's arrest, aside from their general knowledge that the area was highly trafficked in narcotics;

(4) the police observed the car for a very short time, during which time Sims sat quietly until Nicholas came out of the pool hall and entered the car;

(5) the hour, 11:15 p. m., was a reasonable hour for individuals to be abroad on the streets on a June evening;

(6) Nicholas and Sims were black men in a predominantly black area;

(7) the fact that a car has out-of-state license plates does not, of itself, indicate criminal activity. (Footnote omitted.) *Id.* at 624–625.

■ In the instant case the police *were* investigating a particular crime; officer Short *did* have information concerning the getaway car and its occupants; there is no showing here that the arrest of this black defendant was in a predominantly black area. Collins claims that no significance should be attached to the fact that he was black. We do not agree with this contention because the color of a person's skin, be it black or white, is an identifying factor which, while insufficient by itself, assists the police in narrowing the scope of their identification procedure. *See United States*

*v. Brignoni-Ponce,* 422 U.S. 873, 885–886, 95 S.Ct. 2574, 2582, 45 L.Ed.2d 607, 619 (1975).

In our opinion this case falls within the rationale enunciated by Judge Lay in *United States v. Wickizer,* 465 F.2d 1154 (8th Cir. 1972) in which we upheld an investigative stop under the following facts:

The facts show that on the evening of November 6, 1971, at approximately 10:15 p. m., defendant was seated in a parked car in a Kansas City, Missouri, public park. A male friend was in the front seat with the defendant and two young female companions were in the rear seat. A Kansas City police officer was on patrol in the park. The officer had knowledge that there had recently been several rapes in the area. As he approached the Wickizer vehicle he shined his car spotlight through defendant's front windshield and noticed the two girls sitting in the back seat. They were rather young, and he thought they both appeared frightened. The officer stopped and asked the driver to identify himself. *Id.* at 1155.

In deciding that the initial questioning was permissible the court stated as follows:

There existed permissible grounds for the initial questioning of the defendant. The officer's concern over previous rapes in the area and his impression of the frightened appearance of the young girls gave cause for further investigation. *Id.* at 1156.

In *Carpenter v. Sigler,* 419 F.2d 169 (8th Cir. 1969) we upheld an initial stop under these facts:

Early on the morning of April 12, 1966 at approximately 3:30 a. m. officers Sam Austin and William Cowan of the Blair, Nebraska, city police department were patrolling the streets of that city. Blair is a town of approximately 2,000 persons which at the time of this incident had been plagued by a series of burglaries. The officers noticed a car containing two men driving slowly through the streets, located off the main highway, in Blair. The officers did not recognize the car and noticed that it had out of county license

plates. The officers kept the vehicle under surveillance for a period noticing it slowly move by several business establishments which were closed. Then by the use of their flashing red light, the officer signaled the driver to pull the vehicle to the curb. No traffic violation was observed. *Id.* at 170.

In this case, at the time of the initial stop, officer Short had the following information: A bank had been robbed a few minutes earlier, three miles away by three black men who escaped in a late model light brown Cadillac.

■ When he was stopped Collins was driving a late model white over gold or white over brown Cadillac within three miles of the bank; he was alone and he was black; and he was first observed within 10 minutes of the time the bank was robbed. Concededly it is a close case and this initial knowledge did not constitute probable cause for arrest. But as we recognized in *United States v. Nicholas, supra,* 448 F.2d at 624, *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) requires that " * * * [I]n justifying the particular intrusion the police officers must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. * * * And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate? * * * "

In our opinion the facts in this case warranted a man of reasonable caution in the belief that the action taken was proper.

■ The third question we must determine is whether the stop was reasonably related in scope to the circumstances which justified the interference in the first place. Here there was no harassment; the officer advised Collins of the reason for the stop; the officer requested and was given permission to make a partial search; there was a problem with the identification of Collins since he did not have a driver's license but did have a convicted felon registration form; and he was shortly thereafter released without arrest. In our opinion the scope of the stop was reasonable. It certainly compares favorably with the scope of the stop in *United States v. Wickizer, supra,* 465 F.2d at 1156 in which this same question was answered as follows:

Upon disclosure to the officer as to who the defendant was, coupled with the officer's knowledge that he was a convicted felon, it was reasonable to require the defendant and his companions to get out of the car until further assistance came.

During the questioning of Wickizer the officers learned that the car was improperly registered and was missing a license plate. These facts, along with those circumstances discussed, gave reasonable justification for a visual inspection of the car from without. The "search" was not intensive or exploratory in scope. See *United States v. Mahanna,* 461 F.2d 1110 (8 Cir. 1972). Cf. *Chimel v. California,* 395 U.S. 752, 763–764, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *United States v. Parham,* 458 F.2d 438, 439 (8 Cir. 1972); *United States v. Harflinger,* 436 F.2d 928, 932 (8 Cir. 1970), cert. denied, 402 U.S. 973, 91 S.Ct. 1660, 29 L.Ed.2d 372 (1971).

Balancing the need for further investigation, *notwithstanding the lack of probable cause,* and objectively viewing all the existing circumstances, we find the limited intrusion permissible. Simply because the initial questioning might give the appearance that "all is well," if an officer has a justifiable basis for the initial intrusion, he may take whatever additional action which would "warrant a man of reasonable caution" under the circumstances to take. (Emphasis supplied.)

We therefore conclude that the stop was not an arrest but an investigative stop or seizure; that the facts warranted this initial intrusion; and that the scope of the intrusion was reasonably related to the circumstances which justified the interference in the first place.

## 2. The Arrest.

Almost immediately after making the initial stop and releasing Collins, officer Short received additional radio information that one of the robbers was wearing a black motorcycle jacket. He then again stopped Collins and this time arrested him based on the information he had prior to the initial stop, the information gathered during that stop, and the new information concerning the clothing of one of the robbers.

Collins erroneously claims that this case falls within the rationale of *United States v. Shavers*, 524 F.2d 1094 (8th Cir. 1975) in which we held that there was no probable cause for the arrest of Shavers when the only information the arresting officer had was that two black males about 5′ 8″ tall, one of whom (not Shavers) was wearing a black jacket, had attempted to rob a bank a block away 10 minutes before the arrest. In that opinion we noted that the population of the area was about 50% black and many men stand about 5′ 8″ tall. Under these circumstances (and others set forth in the opinion) we remanded the case for further proceedings including a possible new suppression hearing.

■ In this case officer Short had knowledge of all of the facts which we have related and which we have held constituted sufficient reason to make the initial stop. In addition, he knew that Collins had no driver's license; that he claimed to be a convicted felon; that he was wearing a black motorcycle jacket; that he had not permitted the search of the trunk ostensibly for lack of a key; and that one of the robbers was wearing a black motorcycle jacket at the time the crime was committed.

The rule on determining probable cause for arrest was recently set forth in *Kelley v. Swenson*, 510 F.2d 264, 266 (8th Cir. 1975), *quoting United States v. Peep*, 490 F.2d 903 (8th Cir. 1974), as follows:

> We assess probable cause in terms of the eyes of a reasonably cautious and prudent peace officer in the circumstances of the moment. . . . Probable cause to arrest depends "upon whether, at the moment the arrest was made, * * * the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). . . . And in making this assessment we do not isolate for independent analysis each factual circumstance, but rather we view the action of the arresting officers on the basis of the cumulative effect of such facts in the totality of the circumstances. . . . (Citations omitted.)

*See also United States v. Buckhanon*, 505 F.2d 1079, 1081 (8th Cir. 1974).

Using this standard we are convinced that at the time of the arrest during the second stop officer Short had probable cause to arrest Collins. The newly acquired knowledge that one of the robbers was wearing a black motorcycle jacket such as officer Short had already seen on Collins was the additional fact that tipped the scale and gave probable cause for the arrest.

## 3. Validity of the Arrest Warrant.

This question need not be answered in view of our determination of the final question presented by this case. Suffice it to say that the affidavit was lacking in so many ways that the government did not seriously argue the question during oral argument.

## 4. The Validity of the Search Incident to the Arrest.

The police searched the car after first obtaining the questionable warrant and after the car had been removed to the station house. In it they found some of the money stolen from the bank. This money was admitted into evidence after the trial court overruled the motion to suppress.

■ There can be no question here that officer Short had the right to make an immediate search of the entire vehicle for

fruits or instruments of the crime upon making the arrest based on probable cause. *United States v. Heisman*, 503 F.2d 1284, 1290 (8th Cir. 1974). When the car was moved from the highway to the station house the probable cause to search it was not affected. *Texas v. White*, 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209, 44 U.S.L.W. 3327 (1975); *Chambers v. Maroney*, 399 U.S. 42, 52, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419, 428 (1970); *United States v. Harris*, 528 F.2d 1327 (8th Cir. 1975). In addition, removal to the station house was necessary here because the trunk could not be opened at the scene of the arrest. *United States v. Solven*, 512 F.2d 1059, 1060 (8th Cir. 1974).

The judgment of conviction is affirmed.

HEANEY, Circuit Judge (dissenting).

I respectfully dissent. The arresting officer did not have sufficient knowledge, at the time of the initial seizure of the appellant, to justify the stop.[1]

While the Supreme Court has held that the police may make investigatory stops, consistent with the Fourth Amendment, on less than probable cause, it has not held that the constitutional requirement of particularity is no longer required. Indeed, in *Terry v. Ohio*, 392 U.S. 1, 22 n.18, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906 (1968), the Court carefully emphasized that the "demand for specificity * * * is the central teaching of this Court's Fourth Amendment jurisprudence." In *Terry*, the arresting officer was possessed with objective, specific and articulable facts that linked the suspects with possible criminal activity. The facts possessed by the arresting officer in *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), were of the same quality. In contrast, the facts pos-

sessed by officer Short in the instant cause were sufficient to warrant a man of reasonable caution to believe only that some black male driving a late model light brown Cadillac, but not necessarily appellant Collins, was involved in the robbery of the Bank of Lee's Summit.

The potential abuse of investigatory stop procedures is real in a racially neutral society. That potential is aggravated in a society such as ours where race is often an integral part of police suspicion. *See* President's Commission on Law Enforcement and the Administration of Justice, Task Force Report: Police 184 (1967). Strict adherence to the particularity requirement of the Fourth Amendment will insure that the "reasonable suspicion" of a police officer is not the product of an impermissible reliance on race.

The majority was correct in citing *United States v. Brignoni-Ponce*, 422 U.S. 873, 885–886, 95 S.Ct. 2574, 2582, 45 L.Ed.2d 607, 619 (1975), for the proposition that "the color of a person's skin, be it black or white, is an identifying factor which, while insufficient by itself, assists the police in narrowing the scope of their identification procedure." *Supra* at 82. But the majority did not go far enough in analyzing the implications of the statement.

While the factor of race eliminates from suspicion all persons of another race, it cannot be used to create suspicion of a particular person of that race. Officer Short had no more reason to suspect Collins of complicity in the crime than he had to suspect any other of the 25,000 black males between the ages of eighteen and sixty-five who live in the Kansas City, Missouri, metropolitan area.[2] Nor do the additional facts known

1. The federal judiciary must be vigilant in its watch over the protections guaranteed by the Fourth Amendment. The observation of Mr. Justice Douglas need not be true. He said:

"Police power exercised without probable cause *is* arbitrary. To say that the police may accost citizens at their whim and may detain them upon reasonable suspicion is to say, in reality, that the police may both accost and detain citizens at their whim." Am-

sterdam, Perspectives on the Fourth Amendment, 58 Minn.L.Rev. 349, 395 (1974).

*United States v. Brignoni-Ponce*, 422 U.S. 873, 889, 95 S.Ct. 2574, 2584, 45 L.Ed.2d 607, 621 (1974) (Douglas, J., concurring) (emphasis original).

2. The 1970 Census provides the following information: There are 52,553 black males in the Kansas City, Missouri, metropolitan area. Of these, 23,505 are under age eighteen and 3,744

to the officer, that Collins was driving a late model light brown Cadillac and was seen three miles from the robbery scene shortly after its occurrence, have that quality of specificity that eliminates race as a factor in the officer's decision to stop the appellant. These additional facts only narrow the class of black males who could be suspected.[3] The government presented no evidence to support the conclusion that the likelihood of these facts combining is so remote that Collins could be suspected of the crime.[4] The fact that the police were investigating a particular crime and that officer Short had some information concerning the getaway car and its occupants only begs the question. Was there specific, articulable facts sufficient to warrant a man of reasonable caution to believe that Collins was a participant to the crime? In my opinion, the answer must be in the negative. Only when the police reasonably believe a particular suspect to be involved in criminal activity can they make an investigatory stop under the Fourth Amendment.[5] *United States v. Brignoni-Ponce,* supra 422 U.S. at 881, 95 S.Ct. at 2580, 45 L.Ed.2d at 616.

are over age sixty-five. Hence, there are 25,-304 black males between the ages of eighteen and sixty-five in the metropolitan area of Kansas City.

3. The majority states at 82: "there is no showing here that the arrest of this black defendant was in a predominantly black area." This is irrelevant. Collins was driving in a well-traveled area, and no suspicion can attach to the fact that he was not driving in a "predominantly black area." *See United States v. Nicholas,* 448 F.2d 622, 625 n.4 (8th Cir. 1971).

4. According to information received from the Missouri Department of Motor Vehicles, there are 7,018 Cadillacs registered in the Kansas City metropolitan area of the model years 1960 to 1976. Officer Short testified that he considered a 1960 Cadillac to be a late model.

5. *United States v. Wickizer,* 465 F.2d 1154 (8th Cir. 1972), and *Carpenter v. Sigler,* 419 F.2d 169 (8th Cir. 1969), do not support the majority decision. In each case, the police had reason to believe that the particular suspects were involved in criminal activity.