**STATE of Missouri, Plaintiff–Respondent,**

**v.**

**Gaylord W. WEST, Defendant–Appellant.**

**No. 17353.**

Missouri Court of Appeals, Southern District, Division One.

March 10, 1992.

Scott R. Traylor, Raymond A. Morwood, Springfield, for defendant-appellant.

William L. Webster, Atty. Gen., Elizabeth L. Ziegler, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

PARRISH, Judge.

Gaylord W. West (defendant) was convicted, following a jury trial, of driving while intoxicated. § 577.010.1.[1] Defendant was found to be a persistent offender in that he had pleaded guilty to two prior driving-while-intoxicated charges that arose from occurrences on March 20, 1987, in Greene County and on May 9, 1984, in Webster County. § 577.023.1(2). Because defendant was a persistent offender, the present offense was a class D felony.

---

**1.** References to statutes are to RSMo 1986.

§ 577.023.3. Defendant appeals the conviction. This court affirms.

Defendant presents three points on appeal. He contends that the trial court erred in denying his motion for acquittal at the close of all the evidence because the evidence at trial was not sufficient to prove the offense charged (Point I). He further contends that the trial court erred in denying motions for mistrial. Defendant contends that a mistrial should have been granted during the cross-examination of the police officer who arrested defendant. The officer referred to an "eye gaze nystagmus field sobriety test" contrary to an order the trial court had entered by granting defendant's pretrial motion in limine (Point II). Defendant likewise contends that a mistrial should have been granted during the prosecuting attorney's opening statement. The prosecuting attorney spoke about defendant's failure to take a breath test. Defendant contends that statement was also in violation of the trial court's ruling on the pretrial motion in limine (Point III).

In considering whether there was sufficient evidence upon which defendant could be convicted, this court accepts as true all evidence and inferences that support the verdict and disregards unfavorable evidence and inferences. *State v. Brown,* 660 S.W.2d 694, 698–99 (Mo. banc 1983); *State v. Anderson,* 785 S.W.2d 299, 300 (Mo.App.1990).

A police officer observed defendant cross a parking lot at a Git 'N Go store in Springfield the evening of September 29, 1989. Defendant walked across the parking lot to a pickup truck. The officer described what he observed: "I observed that he was staggering as he walked, appeared to be unsteady on his feet." The officer observed the defendant enter the pickup truck on the driver's side. The truck proceeded from the parking lot onto a city street. The officer followed, activating his red lights in an attempt to get defendant to pull over. Defendant did not stop until he had driven approximately two blocks beyond the point where the officer had activated his lights. The officer had also sounded his siren for short durations two or three times before defendant stopped.

When defendant's vehicle stopped, the officer walked to the driver's door. The window in the door was open. Defendant's breath had a strong odor of intoxicants. Defendant's eyes were blood-shot and watery, and his speech was slurred. Defendant was asked to get out of his truck. He did so. Defendant was very unsteady on his feet. He had difficulty standing without leaning or holding onto the truck.

Defendant was asked to stand with his right foot in front of his left foot with his right heel touching the toe of his left shoe. After defendant assumed that position, the officer explained that he wanted defendant to then walk heel-to-toe, with his arms at his side, counting his steps out loud as he walked.

Defendant was unable to maintain his balance standing heel-to-toe while the officer explained to defendant how the officer wanted him to walk for purposes of testing his sobriety. He stepped from the position where he was standing three times in order to keep his balance. After stepping from that position the third time, defendant told the officer that he would not take further tests without an attorney present. From his observations of defendant, the officer formed the opinion that defendant was under the influence of alcohol; that defendant "was very impaired." The officer arrested defendant for "[s]uspected driving while intoxicated."

Defendant was transported to police headquarters where he was requested to take a breath test to determine "the amount of alcohol contained in his blood stream." The arresting officer asked defendant if he would consent to the test. Defendant replied, "I am not drunk, period." Defendant was given a second opportunity to take the test. He refused.

Defendant's claim that the trial court erred in not granting his motion for acquittal at the close of all the evidence—his first point on appeal—is based upon an assertion "that there was no evidence of reasonable grounds for the initial stop of defendant which is a necessary element of the crime

alleged and that the crime had been committed." Defendant relies on two administrative driver's license suspension cases, *Aron v. Director of Revenue,* 737 S.W.2d 718 (Mo. banc 1987); and *Schranz v. Director of Revenue,* 703 S.W.2d 912 (Mo. App.1986); and on a suppression of evidence case, *U.S. v. Carter,* 369 F.Supp. 26, 29 (E.D.Mo.1974). Those cases are of no assistance to defendant.

*Aron* and *Schranz* involved appeals of an administrative suspension of driver's license pursuant to § 302.505. Section 302.-505.1 requires the Department of Revenue to suspend or revoke any person's driver's license who was "driving a motor vehicle while the alcohol concentration in the person's blood or breath was thirteen-hundredths of one percent or more by weight of alcohol in his blood." The statute provides that the volume of alcohol concentration is determined "by chemical analysis of the person's blood, breath, saliva or urine." § 302.500(1).

In *Aron* and *Schranz,* officers had observed erratic driving prior to stopping vehicles and, upon stopping the vehicles, the officers observed other indications that the operators were intoxicated. Those cases held that there had been probable cause for the arresting officers to believe the persons driving the vehicles were intoxicated. The cases held that the same evidence upon which that probable cause was based was sufficient to support the Department of Revenue's administrative suspension of each driver's license. *Aron, supra,* at 719; *Schranz, supra,* at 913.

Defendant contends, based upon the facts in *Aron* and *Schranz,* that an officer must observe a traffic violation or unusual operation of a vehicle before he or she can charge the driver with driving while intoxicated. His reliance upon *Aron* and *Schranz* is misplaced. Those cases do not identify the elements that must be proved in order to show the commission of the criminal offense of driving while intoxicated. They hold only that when there is probable cause to believe a person was driving while intoxicated, the Department of Revenue may administratively suspend that person's driver's license pursuant to § 302.505. The issues in *Aron* and *Schranz* are not present in this case.

*U.S. v. Carter, supra,* is, likewise, of no assistance to defendant. The issue in *Carter* was a search and seizure question involving illegally seized evidence. A police officer stopped a car late at night when there was little other traffic. The officer saw two boxes in the back seat of the vehicle. The driver permitted the officer to look into the boxes. The boxes contained stereo equipment that was later determined to be stolen property. The defendant in that case contended that there was no probable cause to believe that he had committed any offense when the officer stopped him; therefore, the evidence was illegally obtained. The court held that the initial stop of the automobile was an unreasonable intrusion into the occupant's expectation of privacy; that any probable cause was supplied later by inspection of the packages; and, therefore, that the initial stop of the automobile was a "seizure" violative of the Fourth Amendment. 369 F.Supp. at 29. The principles for which the opinion in *Carter* stand have no applicability to the issues on appeal in this case.

The state's brief accurately identifies the elements of the offense of driving while intoxicated. It states, regarding § 577.010:

> Under this statute, the state must prove: 1) that the defendant operated a motor vehicle; and 2) that he operated the motor vehicle while intoxicated. *State v. Keller,* 788 S.W.2d 786, 787 (Mo.App., E.D.1990); *State v. Hollis,* 800 S.W.2d 69 (Mo.App., S.D.1990).

The arresting officer saw defendant before defendant got into his pickup truck. Defendant's movement as he traversed the parking lot was consistent with the gait of an intoxicated person. The officer thereafter saw defendant drive a motor vehicle, the pickup truck. Once the officer stopped the pickup truck, the officer observed other indications that defendant was intoxicated. The jury had that evidence before it. The evidence was sufficient to have permitted a reasonable juror to find, beyond a reasonable doubt, that defendant operated the

motor vehicle and, while operating the vehicle, he was intoxicated. Nothing more is required. *State v. Dulany*, 781 S.W.2d 52, 55 (Mo. banc 1989). Defendant's first point is denied.

■ Defendant's second and third points on appeal will be discussed together. Defendant complains that the trial court failed to grant requests for mistrial that he made following occurrences during trial. He contends that rulings the trial court made when it granted defendant's pretrial motion in limine were violated. The parts of defendant's motion in limine upon which he relies are as follows:

### MOTION IN LIMINE AND TO EXCLUDE SPECIFIC EVIDENCE AND TESTIMONY

Comes now the Defendant, Gaylord West, by and through his attorney of record, David H. Jones, and ... moves the Court in limine for an Order instructing the Prosecuting Attorney to refrain absolutely from making any direct or indirect reference whatsoever, in person or through witnesses, to the evidence hereinafter specified on the following grounds:

.　　.　　.　　.　　.

8. Any referral by the Prosecuting Attorney or any witness making any comments to the effect that Defendant failed the gaze nystagmus test without a proper foundation having been laid by the Prosecuting Attorney's Office.

.　　.　　.　　.　　.

10. That the Prosecuting Attorney or any witness refrain from commenting on the fact that Defendant refused breath tests without proper foundation by the State.

.　　.　　.　　.　　.

Defendant's second point on appeal is directed to paragraph 8 of his motion in limine. During the testimony of the arresting officer, the following occurred:

Q. Did you request the defendant to submit to field sobriety testing?

A. Yes, sir.

Q. And did he agree to do so?

A. Yes, sir.

Q. What field sobriety tests were given?

A. I have the nystagmus and the heel-to-toe test.

Q. You mentioned the heel-to-toe. Would you explain what you wanted him to do?

A. Yes, sir. My standard procedure is to explain the test to the person before I have them begin so that there's no confusion. They [sic] I ask them, prior to letting them begin, if they understand all phases of the test.

Q. Would you describe the physical condition of this lot, specifically whether the ground was level or sloping?

A. Yes, sir. It's a paved lot, it's relatively level. If there's any slope it's simply for drainage. It's not on a hill.

Q. Was there any lighting in this area?

[DEFENDANT'S ATTORNEY]: Your Honor, I'm going to have to approach the bench. I'm sorry for the delay, but—

THE COURT: All right.

[DEFENDANT'S ATTORNEY]:—I've got to make a record.

(Counsel for the plaintiff, counsel for the defendant, counsel for the third party defendant, and the court reporter approached the bench and the following proceedings were entered of record):

[DEFENDANT'S ATTORNEY]: In my motion in limine I asked the Court to instruct the prosecutor's witness not to mention the fact that he was given the nystagmus test and the Court sustained that. The officer has mentioned it now. If he doesn't get into it, the jury is going to think that that test was one that he took into consideration to give his opinion. He was not supposed to mention that at all.

[PROSECUTOR]: I instructed my officer not to say anything about the test, but he just forgot. I immediately went on from there and had no intention of saying anything about it. I'm not going to say anything more about it.

THE COURT: I'm going to overrule the motion.

[DEFENDANT'S ATTORNEY]: Let the record reflect that I move for a mistrial on the grounds that the Court has sustained my motion in limine not to mention in this case the nystagmus test was given. The Court sustained that and the state's witness did mention it to the jury. My client is going to be prejudiced.

THE COURT: I'll overrule the motion as long as we don't get into it any further.

During cross-examination, defendant's attorney inquired about what the officer considered in arriving at the opinion that defendant was intoxicated. The following questions were asked and the officer gave the following answers:

Q. Now, what else did you consider in giving that opinion?

A. Did you say slurred speech?

Q. Yes.

A. Okay. His inability to follow directions. His attitude. His obvious unwillingness to comply with my request to take the field sobriety tests.

Q. All right. Now, what directions did you give him that he didn't follow? I don't see anything in the report on any directions that you gave him that he didn't follow. What directions did you give him?

A. I'm sorry, when?

Q. Well, you said his inability to follow your directions. What directions did you give him that he didn't follow? I don't see any in the report anywhere.

A. There's another field sobriety test also that I gave him at the scene.

Q. Well, what directions did he not follow that you asked him to follow? Can you be specific, because there's nothing in the report.

A. In giving him the eye gaze nystagmus test, a part of that test is that he keep his head straight forward and follow an object with his eyes and his eyes only. He would not do that and had to be told several times to try to keep his head straight instead of moving his head back and forth. He had trouble following that direction.

Q. All right.

Defendant again requested that a mistrial be declared. The trial court denied the request stating that the witness "wasn't trying to bring up the gaze nystagmus test."

Defendant's third point is directed to the request contained in paragraph 10 of defendant's motion in limine. The incident about which defendant complains occurred during opening statements. The prosecuting attorney told the jury that the arresting officer requested defendant to take a breath test to determine the content of alcohol in his blood; that if defendant refused to take the test, "his license could be revoked for one year." Defendant's attorney moved for mistrial. The trial court denied the motion.

Defendant states that the trial court erred in not granting his motions for mistrial "for the reason that the admission of evidence regarding [the eye gaze nystagmus field sobriety] test was prohibited by the trial court's order in [defendant's] motion in limine," (Point II), and "because [statements by the prosecuting attorney referring to defendant's failure to take a breath test] were prohibited under the trial court's order in [defendant's] motion in limine," (Point III).

In *State v. Purlee*, No. 17716, slip op. at 13, 1992 WL 27843 (Mo.App.S.D. filed February 28, 1992), this court observed:

A motion in limine is interlocutory in nature. A pretrial ruling on a motion in limine is not binding upon a trial court during the course of a trial.... "A motion in limine, in and of itself, preserves nothing for appeal." *State v. Gray*, 812 S.W.2d 935, 939 (Mo.App.1991). *See also State v. Vincent*, 785 S.W.2d 805, 808 (Mo.App.1990); *State v. Mason*, 650 S.W.2d 15, 17 (Mo.App.1983); and *State v. Johnson*, 586 S.W.2d 437, 441 (Mo. App.1979).

Defendant's complaint that the trial court's action during the course of trial differed from its pretrial ruling on the motion in limine preserved nothing on appeal. Notwithstanding, this court has reviewed the circumstances surrounding defendant's mo-

tions for mistrial. In its review, this court remained mindful that:

> The declaration of a mistrial is a drastic remedy that should be employed only in the most extraordinary of circumstances. *State v. Sidebottom*, 753 S.W.2d 915, 919 (Mo. banc 1988), *cert. denied*, [488] U.S. [975], 109 S.Ct. 515, 102 L.Ed.2d 550 (1988). The declaration of a mistrial rests largely in the discretion of the trial court because the trial court is in a better position than an appellate court to determine the prejudicial effect, if any, the statement had on the jury. *State v. Anderson*, 698 S.W.2d 849, 852 (Mo. banc 1985).... Our review is limited to determining if the trial court abused its discretion. *State v. Trice*, 747 S.W.2d 243, 247 (Mo.App.1988).

*State v. Price*, 787 S.W.2d 296, 302 (Mo. App.1990).

The only relief requested was mistrial. Implicit in the trial court's rulings denying the requests for mistrial was the determination that the jury was not affected in a manner that prevented it from assessing all the evidence sufficiently to afford defendant a fair trial. This court finds no abuse of discretion by the trial court's denial of defendant's requests for mistrial. Defendant's second and third points are denied. The judgment of the trial court is affirmed.

PREWITT, P.J., and CROW, J., concur.